OPINION OF THE COURT
Joseph F. Falco, J.
This is an action to resolve three issues concerning truth in lending violations, time-barred counterclaims and attorneys fees. On September 15, 1976, plaintiff and defendant both moved for summary judgment. Both motions were denied and a nonjury trial of the matter was ordered on October 5, 1976. This case was then submitted to the court on an agreed set of facts. In addition to the oral argument, both plaintiff and defendants submitted memoranda, briefs and ancillary material.
The facts in this case are as follows: Beginning on December 12, 1973, Rosa McCullough, defendant, obtained a series of loans from the Carrier Employees’ Federal Credit Union. These loans were made on the following dates and in the following amounts:
December 12, 1973 $ 603.16
January 23, 1974 $ 731.90
March 18, 1974 $1,117.60
July 17, 1974 $1,254.73
At the time each of these transactions were entered into, the defendant received disclosure forms of credit information mandated by the Truth in Lending Act (US Code, tit 15, § 1601 et seq.) and Federal Reserve Board regulation Z (12 CFR Part 226). In addition, defendant was also furnished with insurance disclosure forms in connection with each of the four loan transactions on or about the time that each transaction transpired. The defendant executed a promissory note with each credit transaction.
By the terms of each of the promissory notes, the defendant had obligated herself to repay to the plaintiff certain monthly installments plus interest. However, in February of 1975, the defendant received a notice from her employer that she was being laid off. Defendant ceased to make regular payments to *355 the plaintiff on her indebtedness. As a result of her inability to repay the plaintiff on a monthly installment, the promissory note of July 17, 1974, the plaintiff declared the principal sum of $901.23 with interest from May 1, 1975, due and payable. The July 17, 1974 promissory note, as well as the previous notes, contained a provision requiring the defendant to pay attorneys fees in case of default. The fee charged was 25% but no less than $10 if the obligation was placed for collection or suit. The plaintiff claimed $226.56 as the balance due for attorneys fees. This is an action brought by the plaintiff to recover the principal sum of $901.23 and the balance due on the attorneys fees.
There are three issues which we are concerned with; whether under the purview of CPLR 203 (subd [c]), a debtor may assert time-barred truth in lending counterclaims, whether the Carrier Employees’ Federal Credit Union disclosure form for Federal credit unions violated the Truth in Lending Act (US Code, tit 15, § 1601) and regulation Z of the Federal Reserve Board (12 CFR Part 226) and whether the inclusion of the payment of attorneys fees in the creditors promissory note in the event of default is an ultra vires act by the plaintiff credit union.
The intent of Congress upon enacting the truth in lending statutes was to provide the consumer with legal protection when applying for credit. By protecting the consumer, the consumer is better able to "credit shop” and also has some control over his credit obligation.
Under regulation Z, creditors must fully comply with all regulation Z mandates if they: (1) are in the ordinary course of business; (2) regularly extend or arrange for the extension of "consumer credit.” Failure to comply with truth in lending and regulation Z requirements imposes a penalty upon the creditor, especially section 130 (subd [a], par 2, cl [A]) of the Truth in Lending Act which provides that a creditor who fails to comply with the Truth in Lending Act disclosure requirements is liable to the aggrieved borrower in an amount equal to double the finance charge imposed on the extension of credit, subject to $100 minimum and $1,000 maximum limitations.
There are several disclosure violations, all of which result in a penalty violation for the creditor. The most obvious requirement is Carrier’s failure to print the terms "finance charge” and "annual percentage rate” more conspicuously *356 than other required terminology on the disclosure forms. The printing of these words does not stand out and are not more noticeable, even though they are printed darker. The average consumer glancing at the disclosure form could no more differentiate between the "finance charge” than the total of payments. Because of this, 12 CFR 226.8 (d) (3) of regulation Z has been violated. Another error is Carrier’s failure to disclose the amount or method of computing the amount of any default or delinquency charges payable in the event of late payments. (Truth in Lending Act, § 129, subd [a], par [7]; 12 CFR 226.8 [b] [4].) In place of the default or delinquency charge for a late payment, the creditor here has written in an attorneys provision which is due upon total default and not due in the case of late payments.
Under 12 CFR 226.8 (b) (5) of regulation Z, the creditor is required to describe or identify the type of security interest which is to be retained or acquired by the creditor be disclosed. The plaintiff here should have disclosed the provision contained in each promissory note which stated that "upon default of the payment of any installment,” the holder may apply to the payment of this note all sums to the credit of the defendant.
Furthermore, subdivision (12) of section 1757 of title 12 of the United States Code gives a Federal credit union the power to impress and enforce a lien upon the shares and dividends of any member to the extent of any loan made to him and any dues or charges payable by him.
The defendant asserts that the plaintiff’s disclosure form failed to identify the method of computing the unearned portion of the finance charge in the event of prepayment of the obligation. They state that in connection with the loan transaction of July 17, 1974, a precomputed finance charge of $204.27 was listed, but no disclosure of how much of that finance charge would be refunded to plaintiff in the event of prepayment. 12 CFR 226.8 (b) (7) requires creditors who do not provide for any rebate of unearned finance charges upon prepayment in full, to disclose that fact. There is no provision in the Truth in Lending Act which requires a creditor to make such a rebate. Plaintiff’s argument that there are no unearned finance charges does not eliminate the need for disclosure of that fact.
The plaintiff, contrary to defendant’s contentions, is not required to disclose an acceleration clause. The Federal Re *357 serve Board Staff opinion No. 591 dated April 10, 1972, provides that the right of a creditor to accelerate payments upon default is a contractual remedy and not default, delinquency, or similar charge payable in the event of late payment within the meaning of 12 CFR 226.8 (b) (4) of regulation Z. Since the unearned portion of the finance charge is rebated to debtor or credited to the obligation as required by law, there is no additional amount to be paid by the debtor by reason of acceleration; hence, regulation Z is inapplicable to the right of acceleration for want of a charge to disclose. (Frank v Reserve Consumer Discount Co., 398 F Supp 703.)
The plaintiff did not fail to disclose the number, amount and due dates or periods of payments scheduled to repay the indebtedness. Their error was mathematical and is not a basic disclosure problem.
Regulation Z, 12 CFR 226.4 (a) (5) provides that premiums for credit life, accident, health, or loss-of-income insurance written in connection with any credit transaction shall be included in the finance charge unless the insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer. The use of a separate, undated statement which does not identify the transaction would be inappropriate and does not satisfy the requirements of the Federal law. 12 CFR 226.8 (a) makes it clear that the failure to properly locate disclosures is as much a violation of Federal law as the failure to make disclosures at all.
CPLR 203 (subd [c]) allows time-barred claims to be asserted by way of setoff if such claims arose from the same transaction as the plaintiff had sued upon. The plaintiff argues that the subject transaction sued upon occurred on July 17, 1974, and the defendant counterclaimed on April 7, 1976. They cite subdivision (e) of section 1640 of title 15 of the United States Code which states that any action brought under this section must be brought within one year from the date of the violation. The defendant asserts that CPLR 203 (subd [c]) permits the defendant to set off claims arising from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends, the loan transactions of December 12, 1973; January 23, 1974; March 18, 1974; and July 17, 1974; were not unrelated, independent extensions of credit but a series of transactions by which earlier loans were refinanced and additional *358 credit extended. I agree, (see First Nat. City Bank v Drake, NYLJ, Sept. 27,1973, p 17, col 6.)
Truth in lending statutes are a comparatively new concept in the law. The uneducated consumer does not have the expertise to decipher disclosure requirements found on the face of disclosure forms, creating a situation in which a noncomplying creditor could wait to bring an action until the time permitted for a defense based on nondisclosure of credit terms has elapsed which would frustrate the purpose of the Truth in Lending Act.
Accordingly, my holding in this case is that the defendant’s Truth in Lending Act counterclaims are not barred by the Statute of Limitations. That the plaintiff’s disclosure form for credit unions violates the Truth in Lending Act disclosure requirements entitling the defendant to a setoff on the counterclaim in excess of the amount demanded in the complaint; i.e.: amount demanded in plaintiff’s complaint, $901.23; amount of defendant’s setoff, $938.76. CPLR 203 (subd [c]) limits the counterclaim to the amount demanded in the complaint. The question of plaintiff’s attorneys fees is moot as the defendant prevailed on her counterclaim for the full amount demanded in the complaint.
Finally, section 130 (subd [a], par [3]) of the Truth in Lending Act makes the creditor liable for the cost of this action, together with reasonable attorneys fees to be set by the court. The amount of the attorneys fees will be determined after an evidentiary hearing on that issue.