233 N.J. Super. 417 (1989)
559 A.2d 12
THE SUMMIT TRUST COMPANY, PLAINTIFF-RESPONDENT,
v.
JOHN CHICHESTER AND SALLY CHICHESTER, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 8, 1989.
Decided June 5, 1989.
*418 Before Judges PETRELLA, SHEBELL and GRUCCIO.
O'Connor & Verde, attorneys for appellants (Richard J. Verde, on the brief).
Ostrowitz & Ostrowitz, attorneys for respondent (Louis A. Novellino, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
*419 Plaintiff, The Summit Trust Company (Summit Trust) instituted a foreclosure action against defendants John and Sally Chichester seeking to foreclose on two mortgages executed in a single "bridge loan"[1] transaction between it and defendants. The Chancery Judge granted Summit Trust's motion for summary judgment and ordered that the matter proceed to foreclosure uncontested. Defendants appealed from the grant of summary judgment. A final judgment of foreclosure entered against defendants was stayed pending the outcome of this appeal. Defendants filed an amended notice of appeal to include the judgment of foreclosure.
On appeal defendants argue that Summit Trust's motion for summary judgment should not have been granted because there was a material fact question as to whether it had complied with the disclosure requirements of Regulation Z, 12 C.F.R. 226.1 et seq., as promulgated under the Truth In Lending Act (TILA), 15 U.S.C.A. 1601 et seq. Defendants contend that there is a fact question regarding Summit Trust's compliance with the applicable disclosure requirements. They also argue that the Chancery Judge should have allowed them to rescind the loan transaction under 15 U.S.C.A. 1635 and Regulation Z, 12 C.F.R. 226.23, and thereby void the underlying mortgages. This would preclude Summit Trust from proceeding against defendants by way of a foreclosure action and it would require it to proceed against defendants on an unsecured basis. Summit Trust contends that the right of rescission provisions under the TILA and Regulation Z are not applicable to this particular loan transaction and that, therefore, defendants are not entitled to rescind and thereby void the mortgages.
*420 There are actually no material facts in dispute. In the fall of 1986 defendants decided to purchase and move to a larger home at 10 Thrumont Road, West Caldwell, New Jersey (the new house). They were then residing at 10 Washington Avenue in West Caldwell (the old house). On October 2, 1986 defendants entered into a contract to purchase the new house and paid a deposit of $24,500. The closing date for the purchase was ultimately scheduled for January 19, 1987.
Because defendants had difficulty in selling their old house, and to protect the deposit they had already put down on the new house, they sought a "bridge loan" from Summit Trust. The purpose of the bridge loan was to enable defendants to close on the new house while attempting to sell the old house. It was intended that this loan would be paid back when the old house was eventually sold. Defendants had received a firm mortgage commitment for permanent financing on the new house from Citicorp Homeowners, Inc.
A business associate of Mr. Chichester, a Jack Francis, who apparently maintained a substantial account with Summit Trust, was to co-sign the bridge loan to defendants, secured by a pledge of his assets. During the week of January 12, 1987 various loan documents were signed by defendants and Francis at Summit Trust's Roseland branch office. Chichester was subsequently informed by a representative of Summit Trust that its Millburn office would be handling this loan instead of the Roseland office. After numerous attempts made during that week, defendants were ultimately able to contact the Summit Trust representative who was handling their loan and met with him at the Millburn office on Friday, January 16, 1987.
At that meeting the Summit Trust representative advised defendants that the documents they had previously signed with Francis were "filled out wrong" and that a new set of documents had to be signed by defendants alone. Because the closing on their new house was scheduled for the following Monday, January 19, defendants needed the proceeds of this *421 loan quickly. They, therefore, signed the loan documents put before them in order to obtain the loan.
The documents signed by defendants on January 16, 1987 included a demand promissory note in the amount of $42,000 payable to Summit Trust in three months. The promissory note obligated defendants to pay $420 per month in interest only for the months of February and March 1987, and required payment of the balance of the interest and principal on or before April 16, 1987. Defendants also signed two mortgage documents which provided collateral to secure the loan; one on defendants' old house and the other on the new house. Each mortgage provided for the foreclosure and sale of the subject properties in the event of default on the note. The note provided that upon default, defined in part as a failure to make any payment when due, Summit Trust could accelerate the loan and demand payment of the entire unpaid balance.
According to defendants, Summit Trust did not provide them with advance notice that they would be required to sign a mortgage on their old house as well as on their new house which they had not yet purchased. Defendants also indicated that they were not provided with advance disclosures of costs or interest rates of the loan nor were they advised of their right to rescind the transaction. Although it may be an open question as to certain of the disclosures it is conceded that Summit Trust had not furnished the disclosure statement, required under the TILA and Regulation Z, to defendants. It is also undisputed that defendants were not notified of the right of rescission under federal law. Both mortgages were recorded on January 16, 1987.
Defendants failed to make the principal payment due under the note on April 16, 1987, although they had made monthly interest payments under the note and continued to do so up to and including August 10, 1987. The foreclosure complaint was filed by Summit Trust on August 6, 1987. The note and mortgage contained language allowing Summit Trust to accept payments without waiver of its rights.
*422 At the hearing on the motion for summary judgment defendants conceded that they were in default under the loan. However, as a defense to Summit Trust's motion, they asserted the Truth In Lending Act, 15 U.S.C.A. 1601 et seq., and in particular Regulation Z, 12 C.F.R. 226.1 et seq., which requires that certain advance disclosures be made by creditors to consumers. Summit Trust took the position that the Regulation Z right of rescission did not apply to this loan transaction and that, therefore, regardless whether or not the required disclosures were made, defendants were precluded from rescinding this transaction, despite the fact that notice of the right of rescission had not been given.
In a letter opinion dated May 12, 1988 the Chancery Judge concluded that defendants were using the bridge loan proceeds to purchase their new principal dwelling with the result that the transaction fell under the exemption for a "residential mortgage transaction" set forth in the TILA, 15 U.S.C.A. 1635(e)(1) and Regulation Z, 12 C.F.R. 226.23(f)(1). Therefore, he opined that the transaction was not subject to the Regulation Z disclosure requirements. Although the Chancery Judge recognized that there was language contrary to his ruling in a commentary to Regulation Z, 12 C.F.R. 226.23(a)(1), commentary 4, he nonetheless felt that he was bound by the exemption language. He could find no specific statutory or regulatory exception for a "bridge loan." The Chancery Judge thus held that the loan came under the definition of a "residential mortgage transaction" as contained in both the TILA and Regulation Z.
Initially we observe that contrary to defendants' argument, there is no real fact question with respect to whether Summit Trust had complied with the applicable disclosure requirements. Even if Summit Trust's concession as to lack of disclosures was made only for purposes of the summary judgment motion (and we do not discern such from the record), it had not given defendants the required statement as to their rescission rights. There is no dispute that defendants were not notified of their right to rescind. Therefore, the issue before the Chancery *423 Judge was only one of law, namely: whether the rescission provisions under the TILA and Regulation Z applied to the instant loan transaction. We need only consider whether the Chancery Judge appropriately construed the TILA and Regulation Z as a matter of law.
Regulation Z specifies certain disclosures that are required to be made by a creditor in a consumer loan transaction. 12 C.F.R. 226.17(a). The required disclosures include: 1) the annual percentage rate of the loan; 2) the finance charge; 3) the total amount financed; 4) the total payments to be made; and 5) the payment schedule. 12 C.F.R. 226.18. These disclosures are generally required to be made prior to consummation of the loan transaction. 12 C.F.R. 226.17(b). Under 12 C.F.R. 226.23(a) a consumer is granted three business days to rescind a "credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling...." This three day rescission period, however, does not begin to run until: 1) notice of the right to rescind, as required by 12 C.F.R. 226.23(b), is delivered to the consumer; and 2) all the required disclosures under 12 C.F.R. 226.18 are made to the consumer. 12 C.F.R. 226.23(a)(3).
If notification of the consumer's right to rescind is not delivered or the required disclosures are not made then the right to rescind does not expire until three years after consummation of the credit transaction. Ibid. When a consumer rescinds a credit transaction the related security interest becomes void and the consumer will "not be liable for any amount, including any finance charge." 12 C.F.R. 226.23(d)(1). However, the consumer must return to the creditor any monies received in connection with the credit transaction. 12 C.F.R. 226.23(d)(3).
Both the TILA (15 U.S.C.A. 1635(e)) and Regulation Z (12 C.F.R. 226.23(f)) provide that the right of rescission does not apply to certain designated exempt transactions, which includes the exemption for a "residential mortgage transaction." 15 U.S.C.A. 1635(e)(1); 12 C.F.R. 226.23(f)(1). The phrase "residential *424 mortgage transaction" is defined under Regulation Z, 12 C.F.R. 226.2(a)(24) as follows:
`Residential mortgage transaction' means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained in the consumer's principal dwelling to finance the acquisition or initial construction of that dwelling. (Emphasis supplied).
Essentially, the same language is used to define "residential mortgage transaction" with reference to the "consumer's dwelling" in the TILA, 15 U.S.C.A. 1602(w). As noted, the Chancery Judge found that the loan was an exempt "residential mortgage transaction" by virtue of 15 U.S.C.A. 1635(e)(1) and 12 C.F.R. 226.23(f)(1) since he considered that the loan was used to purchase defendants' new house. We disagree.
We conclude that the loan transaction here does not fall within the definition of a "residential mortgage transaction" as defined in 15 U.S.C.A. 1602(w) and 12 C.F.R. 226.2(a)(24). The mortgages, including that taken on defendants' new house, was not as the Chancery Judge found "created or retained in the consumers' principal dwelling to finance the acquisition ... of that dwelling." 12 C.F.R. 226.2(a)(24) (emphasis supplied); see also 15 U.S.C.A. 1602(w). Here, the loan transaction was temporary financing and merely intended as a bridge loan. Indeed, at the time of the bridge loan from Summit Trust defendants already had a firm commitment from Citicorp Homeowners, Inc. for the acquisition financing of their new house to be secured by a first mortgage. The three month bridge loan was clearly never intended to be used by defendants to finance the acquisition of their new house. It was merely temporary financing to enable them to close on the new house pending the anticipated sale of their old house. Furthermore, it was also secured by a mortgage on the old house which would no longer be the defendant's dwelling or principal dwelling. See 15 U.S.C.A. 1602(w); 12 C.F.R. 226.2(a)(24).
Defendants needed temporary financing until such time when they were able to sell their old house. The bridge loan was a short term loan, due to be paid within three months of the date *425 of its execution, and intended to be paid from the proceeds of the sale of their old house. Clearly, the bridge loan was not intended "to finance the acquisition" of defendants' new house within the spirit and intent of the TILA and the cited exemption to Regulation Z.
In our view the exemption in 15 U.S.C.A. 1602(w) and 12 C.F.R. 226.2(a)(24) for a "residential mortgage transaction," defined as a mortgage "created or retained ... to finance the acquisition of [the consumer's principal dwelling]" does not exempt temporary bridge loan financing. We thus conclude that the mortgage given on defendants' new house was not a "residential loan transaction" as defined under the TILA and Regulation Z and, therefore, it is not exempt from the right of rescission under 15 U.S.C.A. 1635, 12 C.F.R. 226.23.
This construction of the exemption and definition of the phrase "residential mortgage transaction" is supported by the Regulation Z commentary to 12 C.F.R. 226.23(a)(1) which states:
4. Special rule for principal dwelling. When the consumer is acquiring or constructing a new principal dwelling, any loan secured by the equity in the consumer's current principal dwelling (for example, a bridge loan) is still subject to the right of rescission regardless of the purpose of that loan.
Clearly, the mortgage taken by Summit Trust in the old house falls squarely within this provision and is subject to the right of rescission. This interpretation also follows from our construction of the phrase "residential mortgage transaction" for the mortgage retained in the new house which is consistent with the language of the Regulation Z commentary.
The legislative purpose of the TILA and Regulation Z is to make available appropriate credit information to permit the consumer to make an intelligent and informed decision with respect to available credit. Brown v. Marquette Savings and Loan Association, 686 F.2d 608, 612 (7th Cir.1982). It is intended to protect the unwary consumer from overreaching practices of creditors by providing consumers with legal protection when applying for credit. Carrier Employees' Federal Credit Union v. McCullough, 93 Misc.2d 353, 400 N.Y.S.2d *426 713, 715 (1977); Toy National Bank of Sioux City v. McGarr, 286 N.W.2d 376, 377 (Iowa 1979). Furthermore, the TILA is remedial in nature and its provisions are to be liberally construed in favor of the consumer. Bizier v. Globe Financial Services, Inc., 654 F.2d 1, 3 (1st Cir.1981). In light of the remedial nature of this statutory scheme it is the substance rather than the form of the transaction that will control the disposition of a particular case. Hickman v. Cliff Peck Chevrolet, Inc., 566 F.2d 44, 46 (8th Cir.1977).
In substance, the instant loan transaction was not executed with the intention that it would provide the financing to acquire defendants' new residence. It was only intended as an interim three month loan. In summary, we conclude that the instant loan transaction is subject to the consumer's right of rescission under 15 U.S.C.A. 1635 and 12 C.F.R. 226.23. Because Summit Trust has failed to deliver to defendants the required right of rescission notification defendants retain the right to rescind pursuant to 12 C.F.R. 226.23(a)(3), including the right to void the underlying mortgages, subject to the provisions of 12 C.F.R. 226.23(d)(3).
The judgments are reversed and the foreclosure is vacated. We remand for further proceedings consistent herewith.
NOTES
[1] A bridge loan is meant to provide short term interim financing until such time when more permanent financing can be obtained.