596 A.2d 763

MANOR MORTGAGE CORPORATION, PLAINTIFF–
RESPONDENT, v. NICOLA GIULIANO,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 12, 1991—Decided September 24, 1991.

14

Before Judges J.H. COLEMAN and BILDER.

*Collins, Toner & Rusen*, attorneys for appellant (*Charles Rusen, Jr.*, on the brief).

*James C. Dezao,* attorney for respondent.

The opinion of the court was delivered by

BILDER, J.A.D.

This appeal arises under the federal Truth in Lending Act (Act), 15 *U.S.C.A.* 1601 *et seq.,* which, *inter alia,* gives mortgage borrowers an unfettered right of rescission for three days following the consummation of the transaction or the delivery of information and rescission forms required by the Act, 15 *U.S.C.A.* 1635(a), relieves the borrower thereupon of any liability for any finance or other charge, 15 *U.S.C.A.* 1635(b), requires the return of any payments to the borrower and termination of any security interest, *ibid.,* and provides for civil liability for failure of a creditor to comply with these provisions, 15 *U.S.C.A.* 1640(a).

The factual background is brief and uncontested. Following negotiations for a $123,000 residential mortgage, in the course of which defendants agreed to pay a 1% commitment fee of $1230, on April 5, 1990 defendants effectively rescinded the agreement pursuant to the Act. No money had been paid which required return and no security interest had been given which required termination.

After rescission, plaintiff demanded payment of the $1230 commitment fee which defendants resisted on the ground that the Act relieved them of any further liability for "any finance or other charge." *See* 15 *U.S.C.A.* 1635(b). Plaintiff sued and defendant counter-claimed for attorney's fees and costs pursuant to 15 *U.S.C.A.* 1640(a)(3) and for punitive damages.

At a bench trial, after consideration of testimony and stipulated facts, the judge found that the commitment fee was a finance charge for which the defendant was not liable [1]; that since the commitment fee was never paid, § 1640(a)(3) does not

[1]Plaintiff has not appealed from this finding.

require the award of attorney's fees or costs; and that there was no "especially egregious" conduct such as would warrant the award of punitive damages, citing *Leimgruber v. Claridge Associates, Ltd.*, 73 *N.J.* 450, 454, 375 *A.*2d 652 (1977).[2] Judgment was entered for defendant on the complaint, and presumably for plaintiff on the counter-claim. Defendants appeal from the denial of punitive damages and of attorney's fees and costs. The question before us is whether an attempt to collect a finance charge for which § 1635 says a borrower is not liable can give rise to § 1640(a)(2) and (3) liabilities for penalties and attorney's fees.

The relevant portions of the federal act are §§ 1635 and 1640 which in relevant part read as follows:

§ 1635   Right of rescission as to certain transactions

### Disclosure of obligor's right to rescind

(a) Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

---

[2] The trial judge apparently treated defendants' punitive damage claim as strictly one based on common law. There is no provision for unlimited punitive damages in the Truth in Lending Act, however § 1640(a)(2)(A) does provide for a penalty equal to twice the amount of the finance charge. Defendants' brief makes clear that this is the "punitive damage claim" they sought in their counterclaim.

### Return of money or property following rescission

(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

§ 1640. Civil liability

### Individual or class action for damages; amount of award; factors determining amount of award

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in any amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction ... except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or

. . . .

(B) and

(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court.

## I.

When Congress gave consumers the substantive protections provided by the Act, it accompanied them with other remedial rights intended to insure that consumers would have

the ability to completely vindicate those substantive rights. It recognized the practical truth that lenders are usually in a stronger economic position than borrowers and that litigation expenses may often make the existence of the substantive rights illusory. By § 1640 it furnished a means for the complete vindication of the § 1635 right by mandating attorney's fees to successful consumers. *See Semar v. Platte Valley Federal S & L Ass'n.,* 791 *F.*2d 699, 703 n. 10 (9th Cir.1986); *Freeman v. B & B Associates,* 790 *F.*2d 145, 148 (D.C.Cir.1986). "Congress saw this as an effective way of encouraging consumers to pursue their rights." Griffith, Truth in Lending—Rescission, Customer Remedies and Creditor Defenses in Closed-end Transactions, 19 *U.Tol.L.Rev.* 491, 529 (1988). The trial judge recognized that a failure of the lender to return a finance charge would have led to the § 1640 liabilities but distinguished this from the instant situation because the lender had not improperly retained a finance charge but was improperly seeking to obtain one.

Such a distinction overlooks the Congressional intention and discounts the remedial purpose of the Act. As remedial legislation created for the protection of borrowers, the Act is to be construed liberally to advance its beneficial aims. *See Summit Trust Co. v. Chichester,* 233 *N.J.Super.* 417, 426, 559 *A.*2d 12 (App.Div.1989). To distinguish a wrongful withholding of improperly retained charges from a wrongful attempt to collect such barred charges would be to elevate form over substance. In either event, the consumer is put to the litigation expenses which Congress has ordained shall fall on the violating lender. Moreover, a plain reading of § 1640 shows that Congress intended by that section to not only protect the borrower against a withholding of reimbursement or failure to release collateral and the litigation expenses incident thereto, but from the litigation expenses engendered by any attempt by the borrower to avoid the requirements of § 1635(b). We are satisfied that a proper interpretation of the Act requires the

award of legal fees and costs to the successful consumer-defendant in this case.

## II.

■ In addition to providing complete indemnity to the consumer by making the lender liable for the consumer's litigation expenses, Congress also provided in § 1640(a)(2)(A) for a penalty as a deterrent to practices which violate the requirements of § 1635(b). The considerations which dictate the application of the indemnity for litigation expenses similarly dictate the application of the penalty. Unlike common law punitive damages, which the trial judge correctly and appropriately refused to award, the penalty (equal to the lesser of twice the finance charges or $1000, here $1000) is not limited to punishment of egregious conduct but is intended to deter all violations of the Act.

The matter is remanded for entry of a judgment for defendant of $1000 plus reasonable attorney's fees and costs.