Edwin KUECHLER, et al., Plaintiffs,

v.

The PEOPLES BANK, Defendant.

Civil No. JFM 08–1735.

United States District Court,
D. Maryland.

March 9, 2009.

John Donald Braden, Eric Sean Poltrack, Foster Braden & Thompson, LLP, Stevensville, MD, for Plaintiffs.

Troy Christopher Swanson, Cohen and Swanson PC, Bel Air, MD, for Defendant.

## MEMORANDUM

J. FREDERICK MOTZ, District Judge.

Plaintiffs Edwin and Rosalie Kuechler ("the Kuechlers" or "Plaintiffs") bring this action against defendant Peoples Bank of Kent County, Maryland ("Peoples Bank" or "Defendant") alleging, *inter alia*, violations of the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), and illegal banking practices in relation to an indemnity mortgage executed by the Kuechlers in favor of Peoples Bank. The Kuechlers filed their original complaint in the Circuit Court for Kent County, Maryland. Peoples Bank removed this case to federal court on July 2, 2008.

Now pending are Plaintiffs' motion for summary judgment on Counts One and Two, Defendant's motion to strike Plaintiffs' affidavit testimony, Plaintiffs' motion for preliminary injunction, to shorten time, and to waive bond, and Defendant's motion to dismiss, or in the alternative, for summary judgment. For the reasons that follow, Defendant's motion for summary judgment is granted on all counts. All

other pending motions are therefore dismissed as moot.

## I.

The facts in this case are largely undisputed. Plaintiffs' son, Michael Kuechler, is the owner of the now bankrupt company Chesapeake Contractors, Inc., which had been in the business of residential and commercial real estate development. (Def.'s Resp. in Opp'n to Pls.' Mot. for Summ. J. and Mem. Supp. Def.'s Mot. to Dismiss or for Summ. J. ("Def.'s Mem.") at 3.) Chesapeake Contractors, Inc.'s primary place of business was located at a property owned by Wheels Rolling, LLC ("the Davidson property"). (*Id.*) The Davidson property is zoned for commercial use. (*Id.* 4.)

In 2005, the owners of Wheels Rolling, LLC offered the Davidson property for sale and Michael Kuechler exercised an option to purchase. (*Id.*) Michael Kuechler created Kuechler Holdings, LLC for the purpose of purchasing all the shares in Wheels Rolling, LLC in order to acquire the Davidson property. (*Id.*) In September 2005, Peoples Bank loaned Kuechler Holdings, LLC the principal amount of $500,000, enabling Wheels Rolling, LLC to purchase the Davidson property. (*Id.*) As part of the credit transaction, Plaintiffs executed a guaranty of pay and performance on the loan agreement. (Def.'s Mem., Ex. 7.) To secure the guaranty,[1] Plaintiffs executed an indemnity mortgage, by virtue of which Peoples Bank acquired a security interest in the Kuechlers' ownership interest in their principal dwelling. (Compl. ¶¶ 4–6.) The loan was also secured by a mortgage on the Davidson property. (*Id.* ¶ 16.) Plaintiffs claim that

---

1. I note that the guaranty itself states that it is "unsecured," rather than "secured by a mortgage or security agreement." (Def.'s Mem., Ex. 7.) However, neither party addresses this fact. It is clear that the understanding of the parties is that the loan is secured by the mortgages on the Kuechlers' residence and the Davidson property.

Peoples Bank, in order to induce Plaintiffs to execute the mortgage on their home, assured them that the foreclosure sales proceeds of the Davidson property would be applied against the $500,000 loan. (*Id.* ¶ 23c.)

Approximately two years later, Peoples Bank made another loan to Wheels Rolling, LLC, or its affiliates, for approximately $650,000. (*Id.* ¶ 17.) The collateral for this loan is a second mortgage upon the Davidson property. (*Id.* ¶ 18.)

Plaintiffs allege that they have a right under TILA to rescind the $500,000 loan transaction and the indemnity mortgage on their home, but that Peoples Bank never delivered to them any notice of their right to rescind as Plaintiffs allege they are required to do under TILA. (*Id.* ¶¶ 10–11.) On or about May 23, 2008, Plaintiffs delivered written notice to Peoples Bank that they were rescinding the mortgage transaction. (*Id.* ¶ 13.) Peoples Bank did not take any action in response so as to terminate its security interest in the Kuechlers' home. (*Id.* ¶ 27.) Peoples Bank alleges that the guaranty signed by the Kuechlers provided that in the event they rescinded the guaranty as to future indebtedness owed on the $500,000 loan, Peoples Bank had the right to declare the full amount due and payable. (Def.'s Mem. 6.) On June 5, 2008, Peoples Bank demanded that the Kuechlers pay or cause to be paid the entire amount due under the demand note. (*Id.* 6–7.) The Kuechlers have not done so. (*Id.* 7.)

Plaintiffs allege that Defendant informed them that unless they made or caused to be made substantial payments towards the $500,000 loan, which were not yet legally due under the terms of the loan, Defendant would foreclose one or both of the mortgages securing the loan. (Compl. ¶ 19.) Plaintiffs allege that they made or caused to be made the demand payments against their will to avoid foreclosure and in reliance on Defendant's promise to apply the proceeds from the foreclosure sale of the Davidson property to the $500,000 loan. (*Id.* ¶¶ 20, 33.) They claim that Defendant then informed them that it intends to foreclose the second mortgage on the Davidson property relating to the $650,000 loan before foreclosing its mortgage on the Davidson property relating to the $500,000 loan. (*Id.* ¶ 21.) The Davidson property is worth approximately $500,000, which means that little or no sale proceeds would be left to apply to the $500,000 loan. (*Id.* ¶¶ 22, 38.)

## II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). When a court considers matters outside the pleadings, a Rule 12(b)(6) motion to dismiss "must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). In order to decide this motion, I must consider an item of extrinsic evidence submitted by Defendant: a guaranty executed by Plaintiffs in the commercial credit transaction at issue. Thus I will treat Defendant's motion as a motion for summary judgment.[2]

---

**2.** Rule 12(d) requires that all parties be given "reasonable opportunity" to present relevant information to the court. Fed.R.Civ.P. 12(d). This requirement may be satisfied if a party is "aware that material outside the pleadings is before the court." *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir.1985). Defendant's motion re-

quests dismissal under Rule 12(b)(6) or, in the alternative, summary judgment under Rule 56, and their supporting memorandum is captioned as supporting "Defendant's Motion to Dismiss Complaint or in the Alternative for Summary Judgment." Given that Plaintiffs also submitted a motion for summary judg-

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A material fact is one that may affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The facts will be construed in the light most favorable to, and all justifiable inferences will be drawn in favor of, the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," "the plain language of Rule 56(c) mandates the entry of summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough to defeat a defendant's motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### III.

### A.

▆ Defendant moves for summary judgment on the Kuechlers' TILA claims. Peoples Bank argues that because the subject matter of the Kuechlers' complaint concerns a commercial loan transaction, it is exempt from and not subject to TILA Regulations, which apply only to consumer credit transactions. (Def.'s Mem. 1.) Plaintiffs argue that because they fall within TILA's definition of consumer, they are excepted from this exemption and have

a right under TILA to rescind the transaction involving their ownership interest in their principal dwelling. (Pls.' Reply to Def.'s Resp. to Pls.' Mot. for Summ. J. and Prelim. Inj. ("Pls.' Reply") at 5.)

The relevant portions of TILA and its accompanying regulations in 12 C.F.R. § 226 ("Regulation Z"), indicate that TILA is inapplicable in this case. Congress has declared that the express purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). For that reason the application of TILA is limited to "consumer" credit, defined as follows:

> The adjective 'consumer,' used with reference to a credit transaction, characterizes the transaction as one in which *the party to whom credit is offered or extended* is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

15 U.S.C. § 1602(h) (emphasis added). Conversely, TILA expressly exempts from its coverage "[c]redit transactions involving extensions of credit primarily for business [or] commercial ... purposes." 15 U.S.C. § 1603(1). Regulation Z similarly states that it does not apply to "business, commercial, agricultural, or organizational credit." 12 C.F.R. § 226.3(a). The provision of TILA governing rescission states:

> Except as otherwise provided in this section, in the case of any *consumer*

ment, and both parties submitted extrinsic evidence, I find that the reasonable notice requirement has been satisfied. "The district court, while it clearly has an obligation to notify parties regarding any court-instituted

changes in the pending proceedings, does not have an obligation to notify parties of the obvious." *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

*credit transaction* ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling *of the person to whom credit is extended,* the obligor shall have the right to rescind the transaction....

15 U.S.C. § 1635(a) (emphasis added).

Plaintiffs concede that the underlying loan in this case is not consumer credit as defined by Regulation Z, and that the loan was "not for personal, family or household purposes." (Pls.' Reply 1.) They argue that this is irrelevant, however, because the definition of consumer is broadened for purposes of rescission to include anyone whose home is subject to the risk of loss, regardless of whether the transaction is commercial or consumer credit or whether or not the person was a party to the credit agreement. (*Id.* 3–5.) Plaintiffs' argument is based on a misreading of TILA, Regulation Z, and the relevant case law.

The definition of consumer is indeed broadened in the context of rescission rights. However, it is not broadened in the manner alleged by Plaintiffs. While TILA and Regulation Z typically focus on borrowers, the right of rescission is broadened beyond the borrower to all consumers who have an ownership interest in the property that is the subject of the transaction and for whom the property is their principal dwelling. In other words, an individual not party to the credit agreement may still rescind the transaction if it puts her home at risk of loss. *See* 12 C.F.R. 226.15(a)(1)(i) ("[I]n a credit plan in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind ....") (applicable to open-end consumer credit transactions); 12 C.F.R. 226.23(a)(1) ("In a credit transaction in which a security interest is or will be retained or acquired in a consumer's personal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ....") (applicable to closed-end consumer credit transactions).

The essential element absent from Plaintiffs' understanding is that this all occurs within the realm of consumer credit transactions. If the credit transaction is for a business or commercial purpose, it is not subject to TILA at all. *Sherrill v. Verde Capital Corp.,* 719 F.2d 364, 368 (11th Cir.1983) ("As a transaction exempted from the Act [in which plaintiffs obtained a loan for the purposes of raising and selling Arabian horses], Section 1635 is of no avail to the Plaintiffs even though a second mortgage was placed on their residence."); *In re DiPietro,* 135 B.R. 773 (Bankr.E.D.Pa.1992) (finding TILA inapplicable to a loan secured by personal home but used to finance a tailor shop); *Ford v. Citizens & Southern Nat'l Bank,* 700 F.Supp. 1121, 1124 n. 2 (N.D.Ga.1988) ("Further, the Official Staff Interpretation of § 226.23 states that the right of rescission does not apply to a business purpose loan, even though the loan is secured by the customer's principal dwelling.") (internal quotations omitted).

The two cases relied upon by the Kuechlers are inapposite because they are both consumer credit transactions. *See Amonette v. IndyMac,* 515 F.Supp.2d 1176, 1178–79 (D.Haw.2007) (determining whether a trustee of a revocable living trust was a natural person subject to TILA in a transaction that the court expressly stated was "for personal and consumer uses, not for a business use"); *Summit Trust v. Chichester,* 233 N.J.Super. 417, 559 A.2d 12, 16 (N.J.Super.Ct.App.Div.1989) (determining whether a bridge loan, which neither party disputed was a consumer credit

transaction, was subject to a different TILA exemption for residential mortgage transactions under 15 U.S.C. § 1635(e)(1)). *See also Weber v. Langholz,* 39 Cal. App.4th 1578, 46 Cal.Rptr.2d 677, 681 (1995) (analyzing whether TILA applied to a transaction with a revocable living trust, but ultimately not deciding the issue because the transaction was indisputably for business purposes, not consumer purposes, and therefore not subject to TILA).

The Kuechlers "incorrectly focus on the status of the individual taking the loan or the collateral providing security for the loan, rather than on the ultimate reason for acquiring the funds from that transaction." *Sherlock v. Herdelin,* No. 04–cv–3438, 2008 WL 732146, at *9, 2008 U.S. Dist. LEXIS 21794, at *29 (E.D.Pa. Mar. 17, 2008) (unpublished). Because the ultimate purpose of the credit transaction involving the Kuechlers' home was commercial in nature, not a consumer credit transaction, the provisions of TILA, including the right to rescind, do not apply. Accordingly, Plaintiffs' claims based on a violation of this right fail as a matter of law.

### B.

Plaintiffs assert six state law claims: marshaling of assets and other illegal banking practices (Count Two), restitution (Count Four), detrimental reliance (Count Five), professional negligence (Count Seven), intentional misrepresentation (Count Eight), and negligent misrepresentation (Count Nine).[3] None of these claims survive Defendant's motion for summary judgment. I will address each claim in turn.

As to Count Two, marshaling of assets is an equitable doctrine applicable in a situation in which multiple creditors have claims to the property of one debtor. *In re Careful Laundry,* 204 Md. 360, 104 A.2d 813, 821 (1954). This doctrine exists "for the benefit of junior creditors." *In re Pray,* 242 B.R. 205, 209 (Bankr.D.Mass. 1999). If one creditor has an interest in two properties of a debtor and a second creditor has an interest in only one of those properties of the debtor, the court may compel the first creditor initially to seek recovery from the property not secured by the second creditor in order to prevent the first creditor from arbitrarily destroying the rights of the second creditor. *Id.* (*citing Meyer v. United States,* 375 U.S. 233, 236, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963)). Here, Peoples Bank is the sole creditor. The equitable doctrine of marshaling of assets is inapplicable.

Plaintiffs appear to bring a more general claim of illegal banking practices based upon Defendant's demand of full repayment of the loan in its June 2005 demand letter and Defendant's alleged assurances at the time the agreement was executed that the foreclosure sale proceeds of the Davidson property would be applied against the $500,000 loan. (Compl. ¶ 23.) However, this claim is precluded by Maryland's statute of frauds.

Under Maryland law,[4] a commercial credit agreement is only enforceable if it: "(1) is in writing; (2) expresses consideration; (3) sets forth the relevant terms and conditions of the agreement; and (4) is signed by the person against whom its enforcement is sought." Md. Cts. & Jud. Proc.Code Ann. § 5–408(b) (2008). The statute expressly states that the definition

---

**3.** Plaintiffs have voluntarily dismissed their intentional infliction of emotional distress claim (Count Six). (Pls.' Supplemental Mem. 17.)

**4.** The parties do not dispute that Maryland law applies to Plaintiffs' state law claims.

of " 'credit agreement' includes agreeing to take or to not take certain actions by a financial institution in connection with an existing or prospective credit agreement." *Id.* § 5–408(a)(2)(ii). "Since 1989 [when this statute was enacted], ... Maryland statutory law has provided that a commercial loan agreement will be unenforceable unless in writing and that an oral modification will not suffice." *Dupont Heights Ltd. P'ship v. Riggs Nat'l Bank,* 949 F.Supp. 383, 388–89 (D.Md.1996).

▪ The guaranty signed by Plaintiffs in connection with the commercial credit transaction clearly states that it "is an absolute, unconditional and continuing guaranty of payment." (Def.'s Mem., Ex. 7 ¶ 2.) The guaranty also states that "Lender [Peoples Bank] shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty." (*Id.* ¶ 11.) The terms of the written agreement are unambiguous and, under Section 5–408, may not be modified by oral representations or promises. It is clear that Peoples Bank's promise to take or not to take certain actions, such as foreclosing on the Davidson property before foreclosing on the Kuechlers' residence, would be part of the credit agreement, as defined by Section 5–408. However, because the alleged promise was not in writing, it is not enforceable. Furthermore, the Kuechlers were legally obligated to read the credit agreement documents before executing them:

> One is under a duty to learn the contents of a contract before signing it; if, in the absence of fraud, duress, undue influence, and the like he fails to do so, he is presumed to know the contents,

signs at his peril, suffers the consequences of his negligence, and is estopped to deny his obligation under the contract.

*Holzman v. Fiola Blum, Inc.,* 125 Md.App. 602, 726 A.2d 818, 831 (Md.Ct. Spec.App.1999). The terms of the commercial credit agreement are unambiguous and do not condition Defendant's right to seek repayment from Plaintiffs upon an effort to first seek repayment from their son or his business. Plaintiffs may not create such a condition by relying on parol evidence. Accordingly, Defendant's motion for summary judgment is granted as to Plaintiffs' claim of marshaling of assets and illegal banking practices.

▪ Count Four is captioned as a "restitution claim based on violation of truth-in-lending law."[5] (Compl. at 6.) Restitution is only appropriate when a "defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain." *Plitt v. Greenberg,* 242 Md. 359, 219 A.2d 237, 241 (1966) (internal quotations omitted). Plaintiffs allege that Defendant's threats of foreclosure caused Plaintiffs to pay money to Defendant that was not then due. (Compl. ¶ 30.) However, the promissory note executed by Michael Kuechler in consideration for the $500,000 loan provides that any outstanding balance on the loan is due on demand. (Def.'s Mem., Ex. 6.) Additionally, the guaranty signed by Plaintiffs states that "[i]f the Undersigned [Plaintiffs] shall ... revoke this guaranty, then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured." (Def.'s Mem., Ex. 7 ¶ 3.) Therefore, under the promissory note, Peoples

---

5. Despite the caption, this claim does not actually appear to be based on TILA.

Bank had a right to demand full repayment of the loan from Kuechler Holdings, LLC at any point. And, upon Plaintiffs' May 23, 2008 notification to Peoples Bank that Plaintiffs "wish[ed] to cancel the loan," Peoples Bank had the right to demand full repayment from Plaintiffs. (Def.'s Mem., Ex. 9.) Because such demand is permissible under the terms of the commercial credit agreement, payments made by Plaintiffs under the loan agreement did not unjustly enrich Peoples Bank such that Plaintiffs would have a right to restitution. Moreover, the amount of restitution sought by Plaintiffs is $350,000. (Compl. at 7.) Plaintiffs fail to explain how this sum is derived or how it would restore to them money which Peoples Bank ought not to retain.

 Count Five alleges detrimental reliance. The elements of detrimental reliance under Maryland law are:

> (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise.

*Citiroof Corp. v. Tech Contracting Co.*, 159 Md.App. 578, 860 A.2d 425, 432 (Md.Ct. Spec.App.2004). Given Maryland's statute of frauds for commercial credit agreements, Md. Cts. & Jud. Proc.Code Ann. § 5–408, Peoples Bank's alleged oral assurances do not constitute a clear and definite promise. Plaintiffs have therefore failed to prove their claim of detrimental reliance.

In Count Seven, Plaintiffs claim professional negligence based on Peoples Bank's alleged inducement of Plaintiffs to provide their house as collateral to secure the $500,000 loan and its failure "to explain to the Plaintiffs that some possibilities existed whereby the sale proceeds from the Davidson property would not be available to be applied or credited in full to the $500,000.00 loan." (Compl. ¶ 50.) According to Plaintiffs, this failure by Peoples Bank constituted a breach of its duty "to engage in lawful and competent banking practices." (*Id.* ¶ 46.)

 However, Peoples Bank did not have a legal duty to advise the Kuechlers of the possibility that it could foreclose on the Kuechlers' property before foreclosing on the Davidson property to satisfy the $500,000 loan. It is well established that "the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor and is not fiduciary in nature." *Yousef v. Trustbank Savs., F.S.B.*, 81 Md.App. 527, 568 A.2d 1134, 1138 (Md.Ct.Spec.App.1990) (internal quotations omitted). "Courts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement."[6] *Par-*

---

**6.** The *Parker* court accepted the reasoning of a Washington state court that, upon analyzing this issue and recognizing the general rule enunciated in *Yousef*, enumerated four "special circumstances" which might impose a fiduciary duty on a bank in relation to its customer. *See Tokarz v. Frontier Federal Sav. & Loan Ass'n*, 33 Wash.App. 456, 656 P.2d 1089, 1094 (1982). The *Tokarz* court found

no such duty because there were no allegations or evidence that the lender:

> (1) took on any extra services on behalf of [the borrowers] other than furnishing the money for construction of a home; (2) received any greater economic benefit from the transaction other than the normal mortgage; (3) exercised extensive control over the construction; or (4) was asked by [the

*ker v. Columbia Bank,* 91 Md.App. 346, 604 A.2d 521, 532 (Md.Ct.Spec.App.1992). "[I]n cases ... where there are none of these special circumstances and no contractual basis for a special duty of care is alleged, a lender owes no duty of care to its borrower." *Id.* at 534. Furthermore, to the extent that an implied duty of good faith exists,

> this duty simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract. Thus, the duty of good faith merely obligates a lender to exercise good faith in performing its contractual obligations; it does not obligate a lender to take affirmative actions that the lender is clearly not required to take under its loan documents.

*Id.* at 531 (internal citations omitted). There are no special circumstances present in the commercial credit agreement entered into by Plaintiffs. Peoples Bank did not owe Plaintiffs any duties beyond those contained in the written agreement, which clearly states that the Kuechlers' property would be subject to foreclosure upon default on the $500,000 loan. (Def.'s Mem., Ex. 8.) Defendant's conduct has been consistent with its obligations under the commercial credit agreement. Plaintiffs' claim of professional negligence therefore fails.

[13] In Count Eight Plaintiffs allege intentional misrepresentation. To prove a claim of intentional or fraudulent misrepresentation, Plaintiffs must show that Peoples Bank: "(1) made a representation that was false, (2) knew of its falsity or made it with such a reckless indifference to truth as to be equivalent to actual knowledge, and (3) made the statement for the purpose of defrauding the injured party;" and

that the Kuechlers "(4) not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and would not have executed the contract had it not been made, and (5) suffered damage directly resulting from such fraudulent misrepresentation." *De-Leon Enterprises, Inc. v. Zaino,* 92 Md. App. 399, 608 A.2d 828, 837 (Md.Ct. Spec.App.1992).

[14] The Kuechlers fail to show that they had a right to rely upon Peoples Bank's alleged misrepresentations. As noted by the *Parker* court, "[r]easonable reliance is one of the most slippery aspects of a fraud case." 604 A.2d at 528. Typically, a party is bound by the terms of a written agreement and may only rely on statements contained within the writing. A limited exception to this general rule exists "where the execution of a written instrument has been induced by false or fraudulent statements or promises." *Schmidt v. Millhauser,* 212 Md. 585, 130 A.2d 572, 576 (1957). However, a party does not have a right to rely upon "allegedly fraudulent statements made in the face of plainly contradictory contractual language." *Call Carl, Inc. v. BP Oil Corp.,* 554 F.2d 623, 631 (4th Cir.1977).

[15] Regardless of any assurances given by Peoples Bank, the documents signed by the Kuechlers clearly place their property at risk in the event of a default on the loan. In *Call Carl,* the plaintiffs alleged that "they entered into franchise renewals with BP in reliance upon fraudulent assurances that BP would not exercise its contractual right of non-renewal at the end of successive yearly lease terms." 554 F.2d at 629. The court stated that such reliance was not reasonable given the lan-

---

borrowers] if there were any lien actions pending.

*Id.*

guage of the contract establishing a one-year, renewable, business relationship. *Id.* I find that it was similarly unreasonable for the Kuechlers to rely on assurances that their home would not be subject to foreclosure in the event of default on the $500,000 loan given that they signed an "absolute, unconditional and continuing guaranty of payment" that states that the "Lender [Peoples Bank] shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty." (Def.'s Mem., Ex. 7 ¶¶ 2, 11.)

█ Count Nine alleges negligent misrepresentation. "To state a cause of action for negligent misrepresentation, ... the plaintiffs must show that [the bank] owed them a duty." *Steigerwald v. Bradley,* 136 F.Supp.2d 460, 467 (D.Md.2001). As discussed in relation to Count Seven, Plaintiffs have failed to show any such duty. This claim therefore fails for the same reasons as Count Seven.

A separate order effecting the rulings made in this opinion is being entered herewith.

### ORDER

For the reasons stated in the accompanying memorandum, it is, this 9th day of March 2009

ORDERED

1. Plaintiffs' motion for summary judgment is denied;

2. Defendant's motion to strike plaintiffs' affidavit testimony is denied;

3. Plaintiffs' motion for preliminary injunction to shorten time and to waive bond is denied;

4. Defendant's motion to dismiss or, in the alternative, for summary judgment is

treated as one for summary judgment and, as such, is granted; and

5. Judgment is entered in favor of defendant against plaintiffs.

