[No. 4793-8-III. Division Three. December 23, 1982.]

RICHARD D. TOKARZ, ET AL, *Appellants*, v. FRONTIER FEDERAL SAVINGS AND LOAN ASSOCIATION, ET AL, *Respondents*.

*Rembert Ryals* and *Critchlow & Williams,* for appellants.

*James K. Hayner* and *Minnick & Hayner,* for respondents.

Roe, J.—Richard and Judy Tokarz (Tokarz) appeal from a summary judgment dismissing their suit against the defendant bank for breach of fiduciary duty and warranty,

fraud, and violation of the Consumer Protection Act.

On April 23, 1977, Tokarz contracted with John Post, a builder and contractor, to have him construct a home on plaintiffs' property. In July 1977, Tokarz obtained financing from defendant Frontier Federal Savings and Loan (Frontier) whereby Frontier agreed to lend $66,400[1] to Tokarz, secured by a deed of trust.

Previously, Frontier had made loans for five homes built by Post.

One month later, in August 1977, a routine credit report by Frontier revealed five liens on homes being constructed by Post. Frontier decided in December 1977 to discontinue lending money to Post because of the liens "and the evident problems that had arisen". Frontier made advances on the Tokarz loan between October 19, 1977, and November 15, 1977. Eventually, due to delays and dissatisfaction with the work, Tokarz ordered Post off the job and work ceased March 14, 1978.[2]

Tokarz sued Frontier, alleging it knew or should have known of Post's financial problems, his inability to perform other contracts in which Frontier was the lender, his incurring of liens which favored suppliers and subcontractors and his delay in progress or completion. Tokarz further alleges that Frontier's failure to disclose this material information resulted in an additional cost of completion of $26,000, plus the expense of defending lien claim foreclosure actions against his property. The trial court granted Frontier's motion for summary judgment.

■ Tokarz' first theory of recovery is breach of fiduciary duty. As a general rule, the relationship between a bank

---

[1]This amount was later increased by $4,000, for a total of $70,400.

[2]In a separate action, Post sued to foreclose a lien against the Tokarz home. Tokarz counterclaimed for breach of contract. The court awarded Post payment for completing 55 percent of the project. However, after offsetting payments already made and bills owed, Post still owed Tokarz $3,272.48.

Tokarz was not awarded damages for the additional cost of completion because the court lacked sufficient evidence to support a finding of such damages.

and a depositor or customer does not ordinarily impose a fiduciary duty of disclosure upon the bank. They deal at arm's length. *Pigg v. Robertson,* 549 S.W.2d 597, 600 (Mo. Ct. App. 1977); *Richfield Bank & Trust Co. v. Sjogren,* 309 Minn. 362, 244 N.W.2d 648 (1976); *Klein v. First Edina Nat'l Bank,* 293 Minn. 418, 196 N.W.2d 619, 70 A.L.R.3d 1337, 1342 (1972); Annot., *Existence of Fiduciary Relationship Between Bank and Depositor or Customer so as To Impose Special Duty of Disclosure Upon Bank,* 70 A.L.R.3d 1344, 1347 (1976). However, "special circumstances" may dictate otherwise: one who speaks must say enough to prevent his words from misleading the other party; one who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party; and one who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts. *Klein v. First Edina Nat'l Bank, supra.* Present–day commercial transactions are not, as in past generations, primarily for cash; rather, modern banking practices involve a highly complicated structure of credit and other complexities which often thrust a bank into the role of an adviser, thereby creating a relationship of trust and confidence which may result in a fiduciary duty upon the bank to disclose facts when dealing with the customer. *Stewart v. Phoenix Nat'l Bank,* 49 Ariz. 34, 64 P.2d 101, 106 (1937). *See also Hutson v. Wenatchee Fed. Sav. & Loan Ass'n,* 22 Wn. App. 91, 588 P.2d 1192 (1978).

The determination of this case is further complicated by the general rule that a bank is under a duty not to disclose the financial condition of its customers. *Milohnich v. First Nat'l Bank,* 224 So. 2d 759 (Fla. Dist. Ct. App. 1969); *Peterson v. Idaho First Nat'l Bank,* 83 Idaho 578, 367 P.2d 284, 92 A.L.R.2d 891 (1961); *Richfield Bank & Trust Co. v. Sjogren, supra. See also State v. McCray,* 15 Wn. App. 810, 817, 551 P.2d 1376 (1976), citing Annot., *Bank's Duty to Customer or Depositor Not To Disclose Information as to His Financial Condition,* 92 A.L.R.2d 900 (1963). Post

was a borrowing customer of Frontier. Frontier contends it therefore had a legal duty *not* to disclose financial information about Mr. Post to Tokarz by virtue of the Fair Credit Reporting Act, 15 U.S.C. § 1681–1681t, and the Financial Privacy Act, 12 U.S.C. §§ 3401–22. The federal legislation is inapplicable since the former act applies only to "consumer reporting agencies" and Frontier does not fit within the definition and the latter applies only to access by a "government authority", and neither party is a government authority. Thus, we must weigh the bank's duty not to disclose information about a customer against the duty to disclose which may arise under special circumstances.

Several Washington cases have discussed the duty to disclose. In *Hutson,* plaintiff borrower sued defendant savings and loan association for breach of implied contract and negligence based on the defendant's failure to procure credit life insurance on her deceased husband to protect their loan. The issue was whether a savings and loan association had a duty to define "mortgage insurance". The court stated that a savings and loan association may be a quasi–fiduciary in its relationship with a borrower where a borrower with less knowledge, experience and judgment relies upon the association's superior business acumen and experience and the association knew the borrower was so relying. In reversing a judgment for the bank, the court held:

> While the lender's duty is not that of a fiduciary, we hold that, *under the circumstances of this case,* it was a jury question whether the lender had a duty to define any ambiguous or specialized terms which might mislead unknowledgeable and uncounseled customers, members of the lay public who rely on the lender's advice. The relationship between such parties involves more trust and confidence than is true of ordinary arm's length dealing, even though the lender legitimately profits from the transaction.

(Italics ours.) *Hutson,* at 105. *Hutson* is limited to its facts. There, the savings and loan association provided its customers with the "extra service" of arranging credit life insur-

ance. It gave advice and the plaintiff rightfully relied on it; therefore, the association may have had a duty to more fully disclose the nature of the insurance plaintiff was purchasing. It was for the jury to decide what statements plaintiff made and whether they were misleading. *Hutson,* at 104.

Similarly, in *Burien Motors, Inc. v. Balch,* 9 Wn. App. 573, 513 P.2d 582 (1973), which involved a real estate broker's duty to disclose certain facts to his client, the court stated at pages 576-77:

An independent contractor, *such as a bank,* attorney, business advisor, or even a broker, conducts an independent business. That fact does not mean that he may not come under a duty to disclose material facts when he assumes a relationship of trust and confidence to another. Such persons are treated as falling within the category of agents. Restatement (Second) of Agency § 14 N, at 80 (1958).

(Italics ours.) Thus, the court affirmed the trial court's rescission of a lease on the ground the real estate broker violated a duty to disclose or at least inform plaintiff as to his lack of knowledge of the zoning status concerning which he had given advice and prepared legal documents.

Here, it must be determined whether there was a special relationship between the plaintiff borrower and defendant bank such as to create a duty to disclose to Tokarz the financial instability of the builder/contractor. No Washington case has addressed this precise issue. Other jurisdictions have considered similar issues, particularly the duty of a lender to exercise reasonable care to detect construction defects. *See* Annot., *Financing Agency's Liability to Purchaser of New Home or Structure for Consequences of Construction Defects,* 39 A.L.R.3d 247 (1971).

Close to the instant case is *Mortgage Assocs., Inc. v. Monona Shores, Inc.,* 47 Wis. 2d 171, 177 N.W.2d 340 (1970), where lien contractors sought priority in a mortgage foreclosure action brought by plaintiff mortgagee. The court rejected the lien claimant's argument that the mort-

gagee owed a duty to disclose that the loan was in default, stating at page 185:

> In the ordinary case of a first mortgage and subcontracts, there exists no duty on the part of the mortgagee to disclose pending or threatening defaults to contractors.
>
> . . . we do not believe Associates had a duty to insure the financial stability of the venture to the subcontractors. Although one must wonder how an experienced lender of money could loan money on the Monona project, there is no evidence Associates was negligent in making this loan or responsible for the collapse of the project. Public policy does not command that financial institutions must insure construction projects.

We find none of the special circumstances which may impose a fiduciary duty. *Cf. Hutson v. Wenatchee Fed. Sav. & Loan Ass'n, supra.* There is no allegation or evidence that Frontier (1) took on any extra services on behalf of Tokarz other than furnishing the money for construction of a home; (2) received any greater economic benefit from the transaction other than the normal mortgage; (3) exercised extensive control over the construction; or (4) was asked by Tokarz if there were any lien actions pending. In fact, section 2, paragraphs 2 and 7 of the contractual agreement[3] between the parties specifically limited Frontier's participation and liability. The parties did not contractually agree to impose on Frontier an additional duty to disclose financial information regarding the builder,

---

[3] "2. The owner has accepted, and hereby accepts the sole responsibility for the completion of said building, or buildings, according to the plans and specifications and for the contract price. In the event that the funds on hand are found to be insufficient to effect the building and complete the same in accordance with the plans and specifications and any agreed extras the owner shall place and hereby agrees to place such additional funds in his construction loan account as may be necessary to complete the building or buildings according to such plans and specifications, plus any extras authorized by him.

". . .

"7. This agreement shall be binding upon the heirs, successors and assigns of the parties hereto. It is agreed that the Association assumes no responsibility or liability for the construction or for payment of any costs or expenses incurred in said construction beyond its liability to apply the funds referred to above in accordance with the agreements herein contained."

nor does Frontier's conduct impliedly create such a duty. To hold otherwise would impose an awesome burden on lenders to notify all of their customers whenever a contractor had difficulties.

Assuming arguendo there was a duty, the evidence supports Frontier's contention that it had no information indicating Post had financial difficulties at the time Tokarz' loan was approved. The credit reports available on Post were a matter of routine loan administration, and not considered detrimental to his credit. Although later one subcontractor filed five liens on houses being built by Post, this was a matter of public record and discoverable by Tokarz. Furthermore, the testimony of Ronald Hue, a branch manager of Frontier, indicated the liens were not of particular concern to Frontier since Post always had acceptable explanations for them.[4]

■ Second, Tokarz contends the alleged failure of Frontier to disclose constituted fraud. The nine essential elements of fraud which must be proven by clear, cogent and convincing evidence are: (1) the representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; (9) his consequent damage. *Webster v. L. Romano Eng'g Corp.*, 178 Wash. 118, 120–21, 34 P.2d 428 (1934); *Turner v. Enders*, 15 Wn. App. 875, 878, 552 P.2d 694 (1976). An action for fraud may also be predicated on concealment where there is a duty to disclose. *Oates v. Taylor*, 31 Wn.2d 898, 904, 199 P.2d 924 (1948). Ordinarily, the duty to disclose a material fact exists only where there is a fiduciary relation-

---

[4]Also, Mr. Hue stated all five liens were filed by one subcontractor. They were of questionable validity as sometimes Mr. Post would withhold payment for inferior work and the subcontractor would in turn file a lien for nonpayment. In oral argument counsel for Frontier stated such was the case with these five liens.

ship and not where the parties are dealing at arm's length. *Oates,* at 903. A party cannot be permitted to say he was taken advantage of, if he had means of acquiring the information, or if, because of his business experience or his prior dealings with the other party, he should have acquired further information before he acted. *Oates,* at 904. Since we hold a fiduciary relationship did not exist between the parties, there was no duty to disclose and thus no actionable fraud based on concealment.

Next, Tokarz contends the following acts of Frontier amount to a violation of the Consumer Protection Act, RCW 19.86: assuring Tokarz that Post built fine houses, refusing to disclose the names of the subcontractors, refusing to make disbursement checks out jointly to Post and the subcontractors, withholding information regarding liens filed against Post's projects, lawsuits filed against Post and inquiries made by his creditors due to nonpayment, and finally, stating it was Frontier's policy not to disclose this information, and that it was in Frontier's best interest that Post remain in business.

Frontier argues it is exempt from the Consumer Protection Act under RCW 19.86.170[5] because it is exclusively governed by federal laws and regulations. The Federal Home Loan Bank Board (FHLBB) is the appointed regulatory agency of federally chartered savings and loan institutions. 12 U.S.C. § 1464(a)(1). It is authorized to prescribe rules and regulations governing virtually every aspect of a federal savings and loan association "from its cradle to its corporate grave". *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* __ U.S. __, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982), quoting *People v. Coast Fed. Sav. & Loan Ass'n,* 98

---

[5]RCW 19.86.170 provides in relevant part:

"Nothing in this chapter shall apply to actions or transactions otherwise permitted, prohibited or regulated under laws administered by the insurance commissioner of this state, the Washington utilities and transportation commission, the federal power commission or actions or transactions permitted by any other regulatory body or officer acting under statutory authority of this state or the United States: . . ."

F. Supp. 311, 316 (S.D. Cal. 1951).

*In re Real Estate Brokerage Antitrust Litig.,* 95 Wn.2d 297, 622 P.2d 1185 (1980), held the Consumer Protection Act will not apply where the following requirements of primary jurisdiction have been met: (1) the administrative agency has the authority to resolve the issues that would be referred to it by the court, (2) the agency has special competence over all or some part of the controversy which renders the agency better able than the court to resolve the issues, and (3) the claim involves issues that fall within the scope of a pervasive regulatory scheme so that a danger exists that judicial action would conflict with the regulatory scheme. The jurisdiction of the FHLBB meets these requirements. We hold that primary jurisdiction lies with the FHLBB and Frontier is therefore exempt from the Consumer Protection Act.[6]

■ Tokarz' final theory of recovery is breach of implied warranty. RCW 62A.2–314(3) provides that other implied warranties may arise from course of dealing or usage of trade. Tokarz contends that Frontier impliedly warranted the exercise of due care in the handling and disbursement of construction funds so as to ensure completion of the project. Since this position is not argued or citation of authority provided, it need not be considered. *State v. Kroll,* 87 Wn.2d 829, 838, 558 P.2d 173 (1976). We note, however, that the scope of article 2 on sales is limited to transactions in "goods". RCW 62A.2–102, .2–105(1). No authority has been cited to us for applying article 2 to transactions between a lender and borrower.

■ Finally, CR 56(c) provides that summary judgment shall be rendered

> if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

---

[6]We note that Tokarz contacted the FHLBB and described the problems. According to Tokarz' deposition testimony, the FHLBB investigated the matter and found no wrongdoing on Frontier's part.

Frontier moved for summary judgment based on the depositions of plaintiff Richard Tokarz, Ron Hue and Dale Bates, employees of Frontier, and extensive citation of authority in its memorandum. These materials establish that no duty arose, contractually or otherwise, on the part of Frontier to disclose financial information regarding Post to Tokarz. Tokarz did not offer any other depositions or affidavits to contradict the facts upon which Frontier relied; but rather, rests on the unsupported allegations of his complaint. Once a party moving for summary judgment makes an initial showing that there is no genuine issue of material fact, the nonmoving party must demonstrate the existence of such an issue by setting forth specific facts which go beyond mere unsupported allegations. *Brame v. St. Regis Paper Co.*, 97 Wn.2d 748, 752, 649 P.2d 836 (1982); CR 56(e). Tokarz has not met this burden.

Judgment affirmed.

McINTURFF, C.J., and GREEN, J., concur.