[No. 10100-2-III.   Division Three.   May 23, 1991.]

INTERSTATE PRODUCTION CREDIT ASSOCIATION, *Respondent,*
v. LYLE R. MACHUGH, ET AL, *Appellants.*

*Michael R. Pickett, Charles M. Andersen,* and *Winston & Cashatt,* for appellants.

*Richard R. Johnson* and *Velikanje, Moore & Shore, Inc., P.S.,* for respondent.

GREEN, C.J.—Lyle R. and Barbara J. MacHugh appeal a summary judgment and decree of foreclosure entered in favor of Interstate Production Credit Association (hereafter PCA) and the dismissal of their counterclaims under CR 12 and CR 56.

The dispositive issue is whether the courts of this state have jurisdiction to adjudicate the merits of the MacHughs' affirmative defenses and counterclaims raised in response to a foreclosure action brought by PCA under the Farm Credit Act of 1971.

Since 1954, Mr. and Mrs. MacHugh have owned a farm near Eltopia on which they raised potatoes, asparagus, onions and wheat. In 1979, they decided to phase out these crops and establish a commercial nursery. The MacHughs expected the value of the nursery stock would eventually approach $8 million.

To secure the necessary financing for the development, they contacted Walla Walla Production Credit Association, the predecessor in interest to PCA, both of which were organized and operated under the Farm Credit Act of 1971. During their initial meeting with PCA officials, they explained their plan to establish a commercial nursery, specifically pointing out that profits were not anticipated for 5 to 7 years. Thus, the development required long–term financing and a delay of principal payments until profits were realized. PCA agreed to loan them $924,245, secured by a mortgage on their home and acreage, and would finance their annual operating expenses.

When the loan papers were presented for signatures, the MacHughs noted the term of the loan was 1 year. After the MacHughs stated unequivocally they could not repay the loan within the year, PCA officials told them not to worry, that they understood the long–term nature of the agreement and would not expect the principal to be repaid even though the loans were written on an annual basis. Based on these assurances, the MacHughs signed the loan papers.

The relationship with PCA continued over the next 3 years, with the unpaid debt being rolled over and additional operating money added to the new loans, each maturing in 1 year. The nursery stock increased and sales were made, but the operation was negatively affected by the eruption of Mount St. Helens and the resulting ashfall, along with a slump in the local economy.

In 1983, PCA suggested to the MacHughs that they secure long–term financing from another source. The MacHughs applied to the Federal Land Bank, the Small Business Administration and the Farm Home Administration, but were unsuccessful. PCA then began to insist upon immediate progress on the payment of principal. In July 1983, PCA required them to execute a loan work–out agreement and then a loan liquidation agreement. PCA recommended they sell their nursery stock at a reduced price, which resulted in a $6,000 loss due to canceled contracts and reorders at the reduced price.

On July 30, 1984, the MacHughs signed an addendum to the loan liquidation agreement in exchange for $56,670 additional operating money. They offered their farm for sale and sought financing from other sources, but to no avail.

On February 27, 1985, the MacHughs executed a second addendum to the loan liquidation agreement. At that time their total debt was $1,447,904.67, including $1,193,704.62 in carry–over debt and $254,200 in new money to cover liquidation expenses. PCA agreed to forbear foreclosure until August 5, 1985. The MacHughs were required to sign a quitclaim deed as a condition of this forbearance. Mr. Mac-Hugh alleged PCA promised to deed back 10 acres of the nursery property including the family home, but the deed was never delivered. Mr. MacHugh also alleged PCA represented that if $500,000 of product could be sold by August, PCA would refinance the operation in 1986. In 1985, the MacHughs had $600,000 in presale contracts and anticipated total sales in the range of $1 to $2 million. They had

at least 1,500 full semi–truck loads of plants ready for sale. Two months later, PCA instituted foreclosure proceedings.

Over the lifetime of the loans, the MacHughs made substantial payments to PCA in servicing the debt, paying most of the interest due. Though the nursery lost money during its first years of operation, the loss decreased as the plants matured. Ninety percent of the plants remained to be harvested when the operation was taken over by PCA in the foreclosure proceeding.

On April 21, 1986, PCA filed a complaint seeking foreclosure of the real estate mortgage, appointment of a receiver, and equitable relief by way of assistance in realizing upon the collateral. The MacHughs answered raising numerous affirmative defenses and counterclaimed for damages. A receiver was appointed on July 21, 1986. PCA moved for summary judgment which was granted and the MacHughs' counterclaims were dismissed.

### DISMISSAL OF CLAIMS UNDER CR 12(b)

■ The MacHughs assert the court erred in dismissing certain claims under CR 12. Review of a dismissal under CR 12(b)(6) and (f)[1] is governed by *Haberman v. WPPSS*, 109 Wn.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1987) *appeal dismissed*, 488 U.S. 805 (1988):

> A trial court may grant dismissal for failure to state a claim under CR 12(b)(6) only if "'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'"

Such motions should be granted "sparingly and with care". A nonmoving party's factual allegations are presumed true

---

[1]CR 12(b)(6) and (f) provide:

"(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted, . . ..
". . . .

"(f) Motion To Strike. Upon motion made by a party before responding to a pleading . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial . . . matter."

and a court may consider hypothetical facts not part of the formal record in deciding whether to dismiss a complaint pursuant to CR 12(b)(6). *Haberman,* at 120 (citing *Halvorson v. Dahl,* 89 Wn.2d 673, 675, 574 P.2d 1190 (1978)).

The counterclaims dismissed[2] under CR 12(b) alleged three different legal bases for recovery: (1) violation of the Farm Credit Act of 1971, (2) violation of state common and statutory law based upon duties imposed as a result of noncompliance with the Farm Credit Act of 1971, and (3) violation of state common and statutory law based upon duties owed which are unrelated to the Farm Credit Act of 1971.

As to the first basis, the trial court's dismissal of the MacHughs' claim to the extent it was based upon violations of the Farm Credit Act of 1971 is correct. The act does not create in the borrower a private right of action against PCA for damages or injunctive relief. *Zajac v. Federal Land Bank,* 909 F.2d 1181 (8th Cir. 1990); *Harper v. Federal Land Bank,* 878 F.2d 1172 (9th Cir. 1989), *cert. denied,* __ U.S. __, 107 L. Ed. 2d 951, 110 S. Ct. 867 (1990). Thus, to the extent the counterclaims seek damages for noncompliance with the Farm Credit Act of 1971, they were properly dismissed as there was no state jurisdiction.

As to the second basis, the MacHughs allege a counterclaim for breach of contract. This claim is based on the allegation that PCA maintained excess collateral and failed to exercise the policies of the Farm Credit Act of 1971. Though drafted in terms of a violation of state common law, the claim is premised upon a duty owed to them by PCA to comply with the provisions of the Farm Credit Act of 1971. For reasons discussed below, dismissal of the

---

[2]The court's order dismissing the counterclaims does not specifically list them but refers to the "cross claims" noted in the MacHughs' answer and cross petition and amended answer and cross petition. In their brief, the MacHughs assign error to the court's dismissal of their counterclaims for breach of implied covenant of good faith, breach of contract, violation of the Consumer Protection Act (CPA), breach of fiduciary duty and the affirmative defense of equitable estoppel.

breach of contract claim, to the extent it is based upon such a duty, is affirmed.

Even though the Farm Credit Act of 1971 does not create a private cause of action for violation of the standards of conduct it prescribes, such conduct may give rise to a state common law cause of action. Whether a duty arises based upon breach of provisions of the Farm Credit Act of 1971 is a question for the courts of the particular state. *Mendel v. Production Credit Ass'n*, 862 F.2d 180, 183 (8th Cir. 1988) (citing *Hofbauer v. Northwestern Nat'l Bank*, 700 F.2d 1197, 1201 (8th Cir. 1983); *Iconco v. Jensen Constr. Co.*, 622 F.2d 1291, 1296 (8th Cir. 1980)). In *Production Credit Ass'n v. Van Iperen*, 396 N.W.2d 35 (Minn. Ct. App. 1986), a debtor sought to pursue state common law actions in tort and contract for noncompliance with policies enunciated in the Farm Credit Act of 1971. *Van Iperen* recognized farmers may assert state common law claims, citing *Johansen v. Production Credit Ass'n*, 378 N.W.2d 59, 62 (Minn. Ct. App. 1985); *Spring Water Dairy, Inc. v. Federal Intermediate Credit Bank*, 625 F. Supp. 713, 720 (D. Minn. 1986); *Corum v. Farm Credit Servs.*, 628 F. Supp. 707, 719–20 (D. Minn. 1986). However, the court concluded a duty did not arise because the act stated policy rather than a substantive rule. *Van Iperen*, at 38; *Yankton Prod. Credit Ass'n v. Jensen*, 416 N.W.2d 860 (S.D. 1987); *Federal Land Bank v. Jensen*, 415 N.W.2d 155 (S.D. 1987).

In *Sierra–Bay Fed. Land Bank Ass'n v. Superior Court*, ___ Cal. App. 3d ___, 277 Cal. Rptr. 753 (1991), the court refused to allow a claim for negligence arising out of the Farm Credit Bank's failure to accept a restructure proposal when the claim was based upon a breach of the Farm Credit Act of 1971. The court noted the statutory standards under the act are not adequately defined so that decisions under it necessarily require the exercise of judgment, discretion, and "studied guesswork". Moreover, a state common law cause of action for damages based upon alleged violations of the act would undermine the purpose of the act in the same manner as would a federal private right of

action. *Sierra–Bay* then concludes state action would be an obstacle to fulfilling the purpose of the Farm Credit Act of 1971 and under the preemption doctrine is foreclosed. For these reasons, the trial court properly dismissed the Mac-Hughs' common law claims for lack of jurisdiction to the extent they are based upon a duty arising from noncompliance with the Farm Credit Act of 1971.

However, as to the third basis, claims based upon violations of state common or statutory law unrelated to a violation of the Farm Credit Act of 1971 are properly within the jurisdiction of the state court. *Creech v. Federal Land Bank,* 647 F. Supp. 1097, 1101 (D. Colo. 1986); *Federal Land Bank v. Lillehaugen,* 404 N.W.2d 452, 457 (N.D. 1987); *Johansen v. Production Credit Ass'n, supra* at 62. Thus, it was error to dismiss on a CR 12(b) motion any counterclaim which alleged a breach of state common or statutory law unrelated to a violation of the Farm Credit Act of 1971.

On this basis, the MacHughs allege several theories of recovery including breach of contract, breach of implied covenant of good faith dealing and equitable estoppel. Because our review is limited to a dismissal under CR 12(b), this court cannot rule at this time that there is no set of facts which would give rise to a claim for damages. We note the potential issues inherent in a breach of contract claim will be governed by *Berg v. Hudesman,* 115 Wn.2d 657, 670–71, 801 P.2d 222 (1990), and the claim for breach of implied covenant of good faith dealing by *Badgett v. Security State Bank,* 116 Wn.2d 563, 569, 807 P.2d 356 (1991). As to equitable estoppel, *Johansen v. Production Credit Ass'n, supra,* is instructive.

Finally, the court also dismissed the MacHughs' claim under the Consumer Protection Act (CPA), RCW 19.86. We agree PCA is specifically exempt from the CPA because it is closely regulated under federal law. RCW

19.86.170; 12 U.S.C. §§ 2261–2274. *See also Tokarz v. Frontier Fed. Sav. & Loan Ass'n,* 33 Wn. App. 456, 464, 656 P.2d 1089 (1982). Thus, there was no error in dismissing the MacHughs' CPA claim.

## DISMISSAL UNDER CR 56

The MacHughs also contend the court erred in its summary dismissal of their counterclaim for breach of fiduciary duty. They contend a fiduciary relationship arose when PCA provided extra services to its borrowers, including the financial advice the MacHughs relied upon when they made the decision to change crops and develop the nursery stock. They claim they relied on PCA as an adviser with superior knowledge.

■ A motion for summary judgment should be granted only if the pleadings, affidavits, depositions and admissions demonstrate the lack of any genuine issue of material fact. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

■ In *Creech v. Federal Land Bank, supra* at 1101, the court recognized a claim for breach of fiduciary duty:

This Court is of the view that a fiduciary relationship may exist between farmers and those who implement the provisions of the Farm Credit Act. Circumstances of the particular dealings between the parties are determinative of whether such a relationship exists. The regulations governing operation of Farm Credit Associations impose high standards of honesty, integrity and professionalism on officers, employees and agents of the Farm Credit System.

However, a review of the evidence indicates PCA did not play an active role in the MacHughs' farming decisions. PCA was consulted only as a financial adviser. Furthermore, the MacHughs had spent their lives farming, so were not unsophisticated when it came to dealing with banks. We conclude their relationship with PCA was arm's length and that no fiduciary duty arose. *Tokarz,* at 462.

The judgment and decree of foreclosure are vacated and the cause is remanded for further proceedings.

MUNSON and THOMPSON, JJ., concur.

Reconsideration denied July 22, 1991.