789 So.2d 411 (2001)
FIRST NATIONAL BANK AND TRUST COMPANY OF the TREASURER COAST, Successor by Merger with Port St. Lucie National Bank, a holding corporation, Appellant/Cross-Appellee,
v.
Charles PACK and Diana Pack, Appellees/Cross-Appellants.
No. 4D00-1959.
District Court of Appeal of Florida, Fourth District.
June 13, 2001.
Rehearing Denied August 7, 2001.
*412 Steven L. Perry of McCarthy, Summers, Bobko, Wood, Sawyer & Perry, P.A., Stuart, for appellant and cross-appellee.
John W. Madden of Jones, Madden & Grosso, P.L.C., Stuart, for appellees and cross-appellants.
HAZOURI, J.
First National Bank and Trust Company (First National) appeals a final judgment awarding compensatory damages to Charles and Diana Pack (Packs) based on a claim for breach of a fiduciary duty. The Packs cross-appeal an order of dismissal *413 with prejudice of their claim for fraudulent inducement. We affirm the final judgment awarding compensatory damages for breach of a fiduciary duty and find it unnecessary to reach the crossappeal because the damages that could have been awarded under a claim for fraudulent inducement are the same damages which were awarded to the Packs for breach of a fiduciary duty.
The Packs' cause of action for breach of fiduciary duty was tried to a jury. First National argues that the trial court erred in failing to grant its motion for directed verdict. The evidence and reasonable inferences adduced therefrom at the trial below must be viewed in a light most favorable to the non-moving party. All conflicts in the evidence must be resolved in favor of the Packs as the nonmoving party. See Easton-Babcock & Assocs., Inc. v. Fernandez, 706 So.2d 916 (Fla. 3d DCA 1998).
In April 1994, the Packs visited a housing development which was being developed by Floridian Homes, Inc. (Floridian Homes). During this visit, the Packs inspected a model home constructed by Floridian Homes which also served as a sales office. At the model home, a representative from First National was present to offer construction loans to prospective buyers. While meeting with the onsite representative of First National, the Packs discussed the loan package being offered and how that process worked in conjunction with Floridian Homes. At that time, First National's representative stated that it had entered into many construction loan agreements with people who used Floridian Homes as their builder and that it had an excellent relationship with Floridian Homes. First National represented that Floridian Homes was a quality company. Shortly thereafter, the Packs entered into a construction contract with Floridian Homes. On May 23, 1994, the Packs entered into a construction loan agreement with First National with an anticipated completion date of November 12, 1994.
The scheduled construction did not proceed smoothly. Although construction was to begin shortly after the signing of the construction contract, there was no activity for two months. The Packs were unsuccessful in getting a response from Floridian Homes and therefore contacted First National to inquire as to whether this two month delay was normal and to request that First National intercede with Floridian Homes to get the construction underway. Within a few days of the communication with First National, Floridian Homes began to clear the lot and after another month delay, began construction. During the construction of their home, the Packs continued to encounter delays and what they perceived to be poor workmanship in the construction. From time to time the Packs would contact First National and ask it to intercede with Floridian Homes which it did with varying degrees of success.
November 12, 1994, came and went without the completion of the construction. A closing was scheduled for May 11, 1995, and on May 10, 1995, Mr. Pack wrote to First National asking that it freeze the final draw because they were continuing to have difficulty with Floridian Homes. Mrs. Pack testified that she spoke to either Donna Newman or Donna Dubois, who were employees of First National working in the construction and mortgage/loan department, and complained that there were serious construction defects with the house. Mrs. Pack said that she told either Newman or Dubois that the paint was coming off in chunks, water leaked into the garage, the planter was installed incorrectly, and there was a "bump out" outside the master bedroom *414 that extended a sufficient distance beyond the normal alignment of the house causing water to collect resulting in deterioration. A representative from First National was scheduled to be present on May 10, 1995, for the scheduled "walk through" inspection but failed to appear. Prior to the closing, the Packs asked First National if they, the Packs, needed an attorney at the closing. First National assured them that was unnecessary. The Packs further testified that they were advised that Hal Roberts, a bank officer, would be present at the closing and that funds would be withheld from Floridian Homes insuring that the defects in the construction would be corrected.
When the Packs arrived at First National's branch office for the closing, they learned that a Mr. Bollinger, another bank officer, had overridden Roberts' agreement to withhold the funds and that the final draw check on the construction loan was made out jointly to the Packs and Floridian Homes. First National assured the Packs that the owner of Floridian Homes, Mr. Lawless, was a person worthy of trust and that First National would obtain an affidavit from Lawless assuring that Floridian Homes would fix the construction defects. First National told the Packs that if they didn't close, First National was washing its hands of the whole proceedings and the Packs would have to go through the court system. Dubois told the Packs that First National could not wait until the Packs obtained an attorney and the closing proceeded.
Floridian Homes never came back to fix any of the problems that had been outlined prior to the closing. The Packs contacted First National which said it would contact Floridian Homes but no action materialized. The Packs were thereafter advised by First National that Floridian Homes was having financial difficulty. The Packs demanded that First National provide them with a copy of the affidavit that said it would have Floridian Homes sign. No such affidavit was ever produced.
The jury returned a verdict finding that First National owed a fiduciary duty to the Packs because it took on extra services for them and because First National knew or had reason to know that they were placing their trust and confidence in the bank and were relying on the bank to counsel and inform them. The jury found that First National breached its duty of loyalty to the Packs and it failed to act in their best interest. The jury found First National ninety per cent responsible and awarded a total of $19,740 for the cost of repairs on the poor workmanship of Floridian Homes. With prejudgment interest, the final judgment in favor of the Packs totaled $29,284.04.
First National argues that no fiduciary relationship arose between it and the Packs and that it did not owe them a fiduciary duty.
"Generally, the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities. However, fiduciary relationships between lenders and customers have been found to exist in Florida, as well as other jurisdictions." Capital Bank v. MVB, Inc., 644 So.2d 515, 518-19 (Fla. 3d DCA 1994) (citations omitted). A fiduciary relationship may be either express or implied. See id. Express fiduciary relationships are created by contract, such as principal/agent, or can be created by legal proceedings in the case of a guardian/ward. See id. A fiduciary relationship which is implied in law is based on the specific factual circumstances surrounding the transaction and the relationship of the parties, see id.; Hooper v. Barnett Bank of W. Fla., 474 So.2d 1253 *415 (Fla. 1st DCA 1985), decision approved, 498 So.2d 923 (Fla.1986), and may be found when "confidence is reposed by one party and a trust accepted by the other." MVB, 644 So.2d at 518 (quoting Dale v. Jennings, 107 So. 175 (Fla.1925)).
In MVB, for example, MVB, a vendor of hair care products, and Tellason, a manufacturer of hair care products, both had a loan relationship with Capital Bank. Assalone, Capital Bank's loan officer for MVB, engineered MVB's purchase of Tellason's assets when Tellason verged on bankruptcy. The equipment was defective and continuously broke down. MVB could not produce and its owner had to sell his companies. Assalone knew that the equipment was faulty and convinced MVB to purchase it by showing him a walk through appraisal of the equipment which was not as accurate as a specific appraisal. Capital Bank also benefitted from the sale of Tellason's assets because, without the sale, Tellason would not have been able to pay its debt to the bank. MVB sued Capital Bank for fraud and breach of fiduciary duty. The trial judge entered a judgment for MVB, awarding compensatory and punitive damages[1] in accordance with a jury verdict on the fraud and breach of fiduciary duty claims. In affirming the trial court, the district court stated:
In Barnett Bank of West Florida v. Hooper, 498 So.2d at 923, the Florida Supreme Court found that a fiduciary relationship arose between a lender and a customer from the parties' established relationship of trust and confidence. Hooper cites to two cases which elaborate criteria for determining the existence of a fiduciary relationship: Klein v. First Edina Nat'l Bank, 293 Minn. 418, 196 N.W.2d 619 (1972) and Tokarz v. Frontier Fed. Sav. & Loan Ass'n, 33 Wash.App. 456, 656 P.2d 1089 (1982).

Klein declared that a fiduciary relationship arises where "the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him." 196 N.W.2d at 623. Tokarz held that "special circumstances" may impose a fiduciary duty on a bank, including where the lender 1) takes on extra services for a customer, 2) receives any greater economic benefit than from a typical transaction, or 3) exercises extensive control. 656 P.2d at 1094.
MVB, 644 So.2d at 519. The district court found there was a fiduciary relationship because Assalone invited reliance by urging MVB to trust him. Assalone fostered the perception that Capital Bank was its financial advisor and the bank knew of the reliance. There were special circumstances because Assalone exceeded his role of a lender by orchestrating the purchase of Tellason's assets. Capital Bank also received greater economic benefit because it was relieved of the loss from Tellason not paying its loan on the assets. Capital Bank breached this fiduciary duty by not acting in MVB's best interest and not disclosing the inaccurate appraisal.
Viewing the facts in the light most favorable to the Packs, there appears to be sufficient evidence that they were justified in placing their confidence and trust in First National and their trust was accepted by First National, thereby creating a fiduciary duty. The Packs asked First National to help get the builder to go forward with the construction and the bank did that. The Packs relied on First National throughout the year to move the *416 construction along and to advise them on their options. When it came time for the closing, First National assured the Packs that its representative would be present at the "walk through," any defects would be corrected, it had obtained an affidavit from the builder to that effect, and it was unnecessary for the Packs to have an attorney of their choosing at the closing to advise them of their options or to advise them of actions that should or could be taken prior to completion of the closing. We therefore affirm the jury's verdict finding that there was a fiduciary duty created between First National and the Packs and that First National breached its fiduciary duty. Since the damages awarded for the breach of the fiduciary duty are identical to the damages claimed for fraud in the inducement, we need not decide whether the trial court erred in dismissing the Packs' claim for fraudulent inducement.
AFFIRMED.
WARNER, C.J., and STEVENSON, J., concur.
NOTES
[1] The award of punitive damages was set aside because the district court concluded that the conduct of the bank did not "descend to the level of actual fraud." MVB, 644 So.2d at 521.