[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15297

_____

D.C. Docket No. 9:14-cv-80321-BB

RAYMOND AKIKI, JUDITH AKIKI,

Plaintiffs-Appellants,

versus

BANK OF AMERICA, N.A.,
BANK OF AMERICA CORPORATION,
GREENTREE SERVICING LLC,
FANNIE MAE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 22, 2015)

Before WILLIAM PRYOR, JULIE CARNES, and SILER,[*] Circuit Judges.

_____

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

JULIE CARNES, Circuit Judge:

This appeal comes to us following the district court's dismissal with prejudice of Plaintiffs Raymond and Judith Akiki's Second Amended Complaint. Upon review of the record and the parties' briefs, and with the benefit of oral argument, we **AFFIRM** for the reasons set out below.

## I.    BACKGROUND[1]

On February 27, 2008, Plaintiffs obtained from defendant Bank of America, N.A. a "no documentation" loan for the principal sum of $96,000 and a home equity line of credit with a $20,000 limit. To secure the former instrument, Plaintiffs granted Bank of America a mortgage on a property in St. Louis, Missouri.

Plaintiffs claim that, from the inception of their loan, they experienced "constant accounting and financial issues with" Bank of America, including the bank's "[holding] back payments from being timely receipted and applied towards the loan without reason" and its misapplication of other payments that were timely made. Two allegations in particular form Plaintiffs' primary grievances about the administration of their loan. First, Plaintiffs claim that, in July 2012, Bank of

---

[1] We derive the pertinent facts from Plaintiffs' Second Amended Complaint. We assume these facts to be true and construe them in the light most favorable to Plaintiffs.

America insisted upon creating an escrow account for the payment of real estate taxes on the mortgaged St. Louis property, despite Plaintiffs being current on such taxes and not otherwise in default.  Plaintiffs frequently complained to Bank of America about the escrow account and the allocation of loan payments to "several artificially created sub accounts," but to no avail:  their payments were not fully applied to the interest and principal due on their loan, which Bank of America eventually declared to be in default as a result.  Second, Plaintiffs claim that their loan documents provide for interest to accrue at a rate of 2.34% per annum, but that Bank of America actually charged them interest at a rate of 5.14% per annum.[2]

In addition to the above, and apart from the administration of their loan, Plaintiffs also allege that Defendants aggressively solicited business from them, despite their lack of creditworthiness for the financial services being offered.  In short, Plaintiffs opine that Defendants departed from traditional, conservative banking practices by offering them an "unlimited battalion" of extraordinary services, regardless of their need or ability to afford these services, simply to further Defendants' own "profit aggrandizement."

---

[2] Plaintiffs' loan was transferred to defendant Green Tree Servicing, Inc. on January 1, 2013, while their home equity line of credit remains with Bank of America.  Where Plaintiffs do not otherwise allege that the defendants, collectively, engaged in wrongdoing, they claim that Green Tree Servicing, Bank of America Corporation, Fannie Mae, and the Federal Housing Finance Authority "confirmed and ratified" the actions of the infringing party, and are thus also liable for such actions.  For ease of reference, our analysis below refers collectively to "Defendants."

Based on the above alleged conduct by Defendants, Plaintiffs filed suit in federal court, alleging violations of the Bank Holding Company Act, National Bank Act, and Florida's Deceptive and Unfair Trade Practices Act, as well as claims for breach of fiduciary duty, gross negligence, unjust enrichment, and equitable estoppel. In response to Defendants' Motion to Dismiss the complaint as, among other things, an impermissible "shotgun pleading," Plaintiffs requested leave to amend "to further delineate the facts and background to support their underlying legal predicates," which request the district court granted.

Other than dropping their Florida Deceptive and Unfair Trade Practices Act count, Plaintiffs' Amended Complaint did not otherwise greatly revise their factual allegations, so Defendants "essentially re-filed their initial motion to dismiss, [] asserting that even with Plaintiffs' amendments, the pleading still warranted dismissal." The district court agreed, concluding that the Amended Complaint made "imprecise, diffuse, and repetitive" allegations and failed to comport with Federal Rules of Civil Procedure 8(d)(1) and 10(b). For that reason, it granted Defendants' motion to dismiss, but dismissed without prejudice in order to allow Plaintiffs one more chance to revive their deficient pleadings. Further, to aid Plaintiffs' future efforts to comply with federal pleading requirements, the court addressed the merits of Plaintiffs' individual claims, instructing them on the

4

elements of each asserted cause of action and noting where their earlier allegations had fallen short.

Thereafter, Plaintiffs took the court up on its offer to permit yet another amended complaint, and Plaintiffs filed their Second Amended Complaint. Yet, they still did not heed the district court's directives as to how to fix their earlier pleadings' shortcomings. Specifically, although Plaintiffs reduced their named causes of action by three—now asserting only claims for violations of the Bank Holding Company Act and National Banking Act, as well as for breach of fiduciary duty, and gross negligence—they nonetheless repeated the same deficient substantive allegations that had prompted the district court's earlier tutorial. Namely, they averred that Defendants (1) impermissibly created an escrow account for the payment of real estate taxes when Plaintiffs had independently paid those taxes and were not in default on their loan, (2) charged Plaintiffs a rate of interest in excess of that provided by their loan documents, and (3) aggressively solicited Plaintiffs for financial instruments and services regardless of their creditworthiness for these products.

Unsurprisingly, this complaint triggered yet another motion to dismiss, which the district court granted—this time with prejudice. The court found that Plaintiffs' Bank Holding Company Act claim failed because they did not allege facts from which one could infer that the complained-of escrow account was

5

unusual or anticompetitive or that Defendants conditioned the granting of a loan to Plaintiffs upon its creation:  facts that were necessary to give rise to the claim asserted by Plaintiffs under this statute.  The court held that their National Bank Act claim failed because (1) Plaintiffs did not comply with the Act's two-year statute of limitations and (2) they did not allege that Defendants charged a *usurious* interest rate, instead only averring that the interest rate charged was higher than that provided by the loan documents.  This latter allegation, the court concluded, was insufficient to create a claim under the National Bank Act.  Finally, the court held that Plaintiffs' breach of fiduciary duty and gross negligence claims failed because Plaintiffs did not allege that they had succumbed to Defendants' aggressive solicitations, and no fiduciary relationship had been created or breached.  Arguing that the district court erred in dismissing this Second Amended Complaint, Plaintiffs have filed the present appeal.

## II.    STANDARD OF REVIEW

"We review de novo a district judge's granting a motion to dismiss for failure to state a claim under Rule 12(b)(6), accept the complaint allegations as true, and construe them most favorably to the plaintiff."  *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 485 (11th Cir. 2015) (citing *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012)).  We similarly review de novo "a

district judge's interpretation of a statute."  *Id.* (citing *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012)).

## III.    ANALYSIS

Plaintiffs' Second Amended Complaint asserts four causes of action: violation of the Bank Holding Company Act, 12 U.S.C. § 1972; violation of the National Bank Act, 12 U.S.C. §§ 85–86; breach of fiduciary duty; and gross negligence.  We consider the sufficiency of each in turn.

### A.    Plaintiffs' Bank Holding Company Act Claim

In 1970, Congress amended the Bank Holding Company Act, 12 U.S.C. §§ 1841 *et seq.*, by adding provisions that prohibit anticompetitive tying arrangements, *id.* §§ 1971 *et seq.*  Whereas the original Act sought to regulate the power of bank holding companies "so as to prevent a small number of powerful banks from dominating commerce . . . the 1970 Antitying Amendment [] intended to reach anticompetitive practices of even smaller banks, which notwithstanding their comparative size, were able to exert economic power over businesses because of their control over credit."  *Parsons Steel, Inc. v. First Ala. Bank of Montgomery, N.A.*, 679 F.2d 242, 244–45 (11th Cir. 1982).

In relevant part, the Antitying Amendment provides that

> [a] bank shall not in any manner extend credit, lease or sell property
> of any kind, or furnish any service, or fix or vary the consideration for
> any of the foregoing, on the condition or requirement . . . that the

7

> customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service[.]

12 U.S.C. § 1972(1)(A).  Here, Plaintiffs argue that Defendants forced on them an illegal tying arrangement when the latter insisted on and ultimately created an escrow account for the payment of real estate taxes, even though Plaintiffs had previously paid those taxes on their own and Plaintiffs were not otherwise in default on their loan obligations.  Importantly though, Plaintiffs make no allegation that Defendants *conditioned* the grant of a loan to them in 2008 on the creation of an escrow account four years later, and for that reason they have failed to state a claim for an illegal tying arrangement in violation of the Antitying Amendment. *Cf. Bass v. Boston Five Cent Sav. Bank*, 478 F. Supp. 741, 743, 746–47 (D. Mass. 1979) (describing a loan agreement that conditioned the extension of credit on the establishment of an escrow account for the payment of taxes, and dismissing in part, on other grounds, plaintiffs' related § 1972 and Sherman Act antitying claims).

A tying arrangement conditions a consumer's purchase of a desired product on his agreement to purchase a second product that he might not want.  *McGee v. First Fed. Sav. & Loan Ass'n of Brunswick*, 761 F.2d 647, 648 (11th Cir. 1985); *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502 (11th Cir. 1985). For example, where a grocer refuses to sell flour to a consumer unless he also purchases sugar, a tying arrangement exists.  *N. Pac. Ry. Co. v. United States*, 356

U.S. 1, 6–7 (1958).  In the context of the Bank Holding Company Act, we have described an illegal tying arrangement as occurring, for example, when a bank refuses to extend credit to a borrower unless the latter also agrees to purchase a separate, unrelated bank service; conditions credit on the borrower providing to it a specific product or service unrelated to the extension of credit; or conditions credit on the borrower agreeing not to engage in a transaction with the bank's competitors.  *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1346 (11th Cir. 1997) (adopting the opinion of the district court).

Clearly, no similar arrangement exists here.  Plaintiffs had obtained their desired loan long before Defendants opened the undesired escrow account.  In fact, Plaintiffs don't even try to argue that the former event was contingent upon the latter, or otherwise occurred in anticipation of it.  Put another way, Plaintiffs do not claim that Defendants required them, in 2012, to accept an escrow account in order to obtain, in 2008, a loan.  Indeed, such a claim is not possible in a temporal sense because, absent some time travel mechanism, a person's reluctant agreement to a demand in 2012 can never be said to have been given for the purpose of receiving a benefit that had already been conferred four years before.  Nor do Plaintiffs claim that Defendants forced their acquiescence to the undesired escrow account by

9

threatening alteration of the terms or conditions of their loan, such as by increasing the rate of interest.[3]

Consequently, Plaintiffs having failed to sufficiently plead that Defendants conditioned an extension of credit to them on their agreement to obtain an additional service, we conclude that the district court correctly dismissed their claim for violation of the Bank Holding Company Act. *See Parsons Steel*, 679 F.2d at 244–46 (affirming judgment notwithstanding the verdict for plaintiffs' failure to establish a tying arrangement); *see also Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 567–68 (6th Cir. 2003) (affirming summary judgment because plaintiff did not prove that "the purchase of the tied product or service was a mandatory condition or requirement of obtaining a loan from the lender.").

Moreover, even if Plaintiffs could surmount the first hurdle described above, they would falter on the next. A litigant who seeks to assert a claim for violation of the Antitying Amendment must allege that the "condition placed on the loan is (1) an unusual banking practice; (2) an anticompetitive tying arrangement; and (3)

---

[3] The use of an escrow account to pay real estate taxes in the event of a default was a condition of Plaintiffs' loan at its inception. As discussed *infra*, Plaintiffs argue the triggering event—a default—had not yet occurred, and therefore the escrow account Defendants created constituted a new condition imposed upon their loan. Such action, however, would give rise to a breach of contract claim, not a claim for an illegal tying arrangement in violation of the Bank Holding Company Act.

10

a practice that benefits the bank." *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1350 (11th Cir. 1996) (citing *Parsons Steel, Inc.*, 679 F.2d at 245; *Palermo v. First Nat'l Bank & Trust Co. of Okla. City*, 894 F.2d 363, 368 (10th Cir. 1990); and *Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273, 278 (6th Cir. 1991)). Here, not only do Plaintiffs fail to allege that the creation of an escrow account for the payment of real estate taxes on a borrower's mortgaged property is an unusual banking practice, they concede it is "typical" and "standard" in the industry, appears in their *own* loan documents, and even falls under an exception to the Antitying Amendment.[4]

To avoid the dismissal of their Bank Holding Company Act count on the above ground, Plaintiffs argue that Defendants' creation of an escrow account was unusual *in this case* because, while their loan documents called for that action if Plaintiffs committed a default, no default occurred. But even if factually accurate, Plaintiffs' argument yields only a simple breach of contract claim, which cause of action Plaintiffs did not plead. A breach of contract claim cannot be contorted into a claim under the Antitying Amendment, particularly when the practice that is the subject of the alleged breach is standard in the banking industry. Indeed, one of Congress's aims in passing the Amendment was to avoid "'interfer[ing] with the conduct of appropriate traditional banking practices[.]'" *Parsons Steel, Inc.*, 679

---

[4] We make no judgment on the accuracy of the latter claim.

F.2d at 245 (quoting Sen. Rep. No. 91–1084, 91st Cong., 2d Sess., reprinted in U.S. Code Cong. & Ad. News 5519, 5535 (1970)); *see also Swerdloff v. Miami Nat'l Bank*, 584 F.2d 54, 59 (5th Cir. 1978) ("It is sufficient to allege that the bank required a customer to do an act *not related to nor usually provided in connection with a loan*.") (emphasis added) and 1 Grant S. Nelson, Real Estate Fin. Law § 4:17 (6th ed. 2014) (stating that the use of escrow accounts for the payment of taxes and insurance became "widespread" after the "depression experience of the 1930's" and expanded in light of related Federal Housing Administration guidelines).  Obviously, even for federally-chartered banks, not every wrong begets a federal cause of action.  For all the above reasons, we conclude that the district court correctly dismissed Plaintiffs' claim under the Bank Holding Company Act.

## B.    Plaintiffs' National Bank Act Claim

Generally, the National Bank Act forbids usurious interest, meaning that a bank cannot charge interest at a rate greater than is permitted by the law of the state, territory, or district in which it is located.  12 U.S.C. §§ 85–86; *see also* 12 C.F.R. § 7.4001.  Where no local restriction exists, the National Bank Act sets the threshold for usurious interest at the greater of "7 per centum, or 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where" the lender is located.  12 U.S.C.

§ 85.  A plaintiff who seeks to bring an action for violations of the above provisions must do so within two years of the allegedly usurious transaction.  *Id.* § 86.

Here, Plaintiffs claim that Bank of America violated the National Bank Act by charging them interest at a rate of 5.14% per annum, even though the relevant loan documents provided for a rate of interest at 2.34% per annum, and by engaging in "misappropriations, improper escrows, improper accounting, hold-backs, and other accounting discrepancies."  The district court dismissed this claim upon finding that Plaintiffs failed to demonstrate that the complained-of-transactions occurred within the National Bank Act's two-year limitations period, *id.*, and because the Second Amended Complaint did not "indicate how the interest rates assessed were usurious in nature," rather than simply a breach of the loan documents.

In their initial notice of appeal, Plaintiffs identified as erroneous the district court's above conclusions, but they have not offered any argument on that point in their brief to this Court.  Consequently, Plaintiffs have abandoned any objection that they might otherwise have made about the dismissal of their National Bank Act claim, meaning that the district court's decision on this claim is therefore affirmed.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or

13

argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.") and *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012) (collecting cases).

### C.    Plaintiffs' Breach of Fiduciary Duty and Gross Negligence Claims

Under Florida law, claims for both breach of fiduciary duty and gross negligence require as their first element that the defendant owe the plaintiff some legal duty.  *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002); *Lamm v. State St. Bank & Trust*, 749 F.3d 938, 947 (11th Cir. 2014) (quoting *Estate of Rotell ex rel. Rotell v. Kuehnle*, 38 So. 3d 783, 789 (Fla. 2d Dist. Ct. App. 2010)).  One circumstance in which such duties arise is when a fiduciary relationship exists between the parties.  A fiduciary relationship can be either express or implied. *Maxwell v. First United Bank*, 782 So. 2d 931, 933 (Fla. 4th Dist. Ct. App. 2001). The former derives from a contractual obligation; the latter "is based on the circumstances surrounding the transaction and the relationship of the parties."  *Id.*

In the present case, Plaintiffs assert that Defendants became their "financing 'partner[s]'" by extending them a loan in 2008 and thereafter "aggressively solicit[ing them] to borrow more and more money."  From this premise, Plaintiffs infer that Defendants became their fiduciary, and were obliged to fulfill the duties attendant to that status.  Plaintiffs further argue that Defendants breached these fiduciary duties by "approving participation in placing [Plaintiffs] wrongfully in

14

default, when no such default existed, and intentionally instituting collection and threatening foreclosure proceedings, when then in violation of federal and state laws and regulations."

Plaintiffs' characterization of their relationship with a lending institution is way off the mark. "Generally, the relationship between a bank and its borrower is that of creditor to debtor, in which [the] parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities." *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d Dist Ct. App. 1994); *see also Maxwell*, 782 So. 2d at 934 and *Metcalf v. Leedy, Wheeler & Co.*, 191 So. 690, 692–93 (Fla. 1939) (holding that defendants owed plaintiff no fiduciary or special duties in arm's-length transaction). Likewise, in interpreting Florida law, we have noted that, "[u]nder Florida law, it is clear that a lender does not ordinarily owe fiduciary duties to its borrower." *Motorcity of Jacksonville, Ltd. v. Se. Bank N.A.*, 83 F.3d 1317, 1339 (11th Cir. 1996) (en banc), *vacated*, 519 U.S. 1087 (1997), *reinstated*, 120 F.3d 1140, 1145 (11th Cir. 1997) (en banc).

That said, a fiduciary relationship could potentially arise in special circumstances "where 'the bank knows or has reason to know that the customer is placing trust and confidence in the bank and is relying on the bank so to counsel and inform him.'" *Building Educ. Corp. v. Ocean Bank*, 982 So. 2d 37, 41 (Fla. 3d Dist. Ct. App. 2008) (quoting *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842

15

So. 2d 204, 208 (Fla. 3d Dist. Ct. App. 2003)); *see also Barnett Bank of W. Fla. v. Hooper*, 498 So. 2d 923, 925–26 (Fla. 1986).  Such circumstances typically exist where a bank "(1) takes on extra services for a customer, (2) receives any greater economic benefit than from a typical transaction, or (3) exercises extensive control."  *Capital Bank*, 644 So. 2d at 519 (citing *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 33 Wash. App. 456, 462 (1982)).

Take, for example, the interactions between lender and borrower in *Capital Bank*.  There, by purposefully creating a familial relationship of trust and confidence, a bank was found to owe fiduciary duties to a customer whom it then intentionally pressured into purchasing the malfunctioning assets of another customer that was on the verge of bankruptcy, just so the latter could pay back the debt it owed the bank.  *Id.* at 519–21.  Likewise, in *First National Bank and Trust Company of Treasurer Coast v. Pack*, a lender was found to owe its borrowers fiduciary duties when it acted as a conduit between the borrowers and a construction company building their house; assured the borrowers its representative would be present at the final walk-through and that any defects would be corrected; and advised the borrowers that it was unnecessary for them to retain an independent attorney to guide them through closing.  789 So. 2d 411, 415–16 (Fla. 4th Dist. Ct. App. 2001).

16

Plaintiffs' relationship with Defendants bears no similarity to the facts found in the above Florida cases. Plaintiffs offer no clue as to how their 2008 interaction with Defendants, in which they obtained the loan and home equity line of credit at issue, was anything but an ordinary commercial transaction. *See Capital Bank*, 644 So. 2d at 521. They do not allege that Defendants provided them with counseling services, assumed additional roles, established a confidential relationship, or in any way fostered or encouraged an environment of trust and counseling—let alone that Plaintiffs acted in reliance on any such perceived relationship. *Contra Pack*, 789 So. 2d at 415–16; *Capital Bank*, 644 So. 2d at 520–21; and *Barnett Bank*, 498 So. 2d at 925–26.

Similarly, Plaintiffs complain about aggressive sales tactics in which Defendants allegedly engaged. Yet, Plaintiffs never claim that they succumbed to those tactics by *actually purchasing* any of the "extraordinary" banking services being offered. *Cf. Capital Bank*, 644 So. 2d at 519 (describing how the borrower relented to the lender's urging to enter into a series of transactions with another of its customers) and *Ocean Bank*, 982 So. 2d at 40 (holding that bank owed no fiduciary duties to potential customer). Rather, their Second Amended Complaint merely enumerates a number of available products offered by Defendants, and the sales tactics used by the latter to market these products. That Defendants may have tried to sell to Plaintiffs products that it would have been imprudent for Plaintiffs

17

to purchase does not transform an earlier and independent arm's-length transaction into a fiduciary relationship.  Nor could there be any breach of these imagined fiduciary duties because Plaintiffs never took the bait.  Therefore, we conclude that the district court correctly dismissed Plaintiffs' claims for breach of fiduciary duty and gross negligence.

## IV.    CONCLUSION

For the above reasons, we **AFFIRM** the district court's order granting Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint.